REECE BUTTON–HOLE MA. CO. v. GLOBE BUTTON–HOLE MA. CO. et al.

(Circuit Court of Appeals, First Circuit. April 20, 1894.)

No. 72.

1. PATENTS—LIMITATIONS—EQUIVALENTS.
     Where the essence of an invention in respect to buttonhole machines is the production of an automatic relative motion between the stitching mechanism and the plate, whereby the buttonhole is stitched along one side, and then about the eye and along the other side, which constitutes a broad and meritorious invention, the fact that the specifications and claims speak of a movement or traveling of the stitching mechanism only will not prevent the application of the doctrine of equivalents, so as to cover a machine which accomplishes the same result by moving the plate while the stitching mechanism remains stationary. 54 Fed. 884, reversed. Winans v. Denmead, 15 How. 330, applied.

2. SAME—EFFECT OF AMENDING CLAIMS.
     The rejection of a claim and its amendment, where there is no direct issue of novelty or invention, and the amendment comes in incidentally and in reference to an incidental matter, does not necessarily exclude a liberal interpretation or the application of the doctrine of equivalents, when the invention is a broad one. 54 Fed. 884, reversed.

3. SAME—VALIDITY—INFRINGEMENT—BUTTONHOLE MACHINES.

The Reece patent, No. 240,546, for improvements in buttonhole machines, construed, and claims 5, 11, 12, 13, and 18 *held* valid, and infringed.  54 Fed. 884, reversed.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

This was an action by the Reece Buttonhole Machine Company against the Globe Buttonhole Machine Company and others for infringement of letters patent Nos. 240,546 and 349,359, to John Reece, for buttonhole sewing machines. The latter patent was withdrawn in the court below before the hearing. The circuit court dismissed the bill (54 Fed. 884), and the complainant appealed.

The claims of patent No. 240,546, which were in controversy, are as follows:

5. In a buttonhole sewing machine, a framework for the needle bar and looper, and a bedplate to hold the material, combined with two cams and with mechanism between the said cams and framework, whereby the needle bar, by the movements imparted to it longitudinally and laterally of a buttonhole by the said frame, is caused to travel backward in a substantially straight line until near the eye of a buttonhole, then backward and outward and inward, then forward and inward, to follow the contour of the edge of the enlarged eye part of the buttonhole, and then forward substantially in a straight line along the other side of the buttonhole, as set forth.

11. In a buttonhole sewing machine, a clamp and bedplate to hold the material, the framework, a, the buttonhole cutting device connected therewith, combined with a cam disk to operate the said buttonhole cutter, to cut a slit in the material held by the clamp, and then to move said framework longitudinally upon said bedplate to remove the blade of the cutter from above the clamp, substantially as described.

12. The framework, a, and bedplate, a', and the cloth-clamping mechanism, movably connected with the bedplate, combined with the cutting bed and means for moving the cutting bed and frame longitudinally with relation to the cloth-clamping mechanism, the said cutting bed being provided with inclines or projections to act upon the clamp and spread the buttonhole as the relative positions of the bedplate and framework are changed longitudinally, substantially as described.

13. The main shaft, a², the belt pulley loose on the said main shaft, the disk or pulley, r⁴, fixed to said shaft, and means to connect it with or disconnect it from the loose pulley, the stopping-levers and its spring, the movable framework, which carries the needle and looper mechanisms, and means to move the said framework, in combination with the controlling bar, whereby the belt pulley is disengaged from the fixed pulley, r⁴, to enable the shaft, a², to remain at rest while the belt pulley continues to run loosely on the said shaft, substantially as and for the purposes set forth.

18. The frame of a sewing machine constructed with two arms, one arm carrying above the cloth plate a reciprocating needle bar having a periodical rotary motion, and the other arm carrying below the cloth plate a looping mechanism having a rotary motion in unison with that of the needle bar, substantially as described.

Lange & Roberts and Fish, Richardson & Storrow, for appellant.

Clarke & Raymond, Chauncey Smith, and Charles E. Mitchell, for appellees.

Before COLT and PUTNAM, Circuit Judges, and NELSON, District Judge.

PUTNAM, Circuit Judge. The bill in this case was framed with reference to two patents, but one was withdrawn before the hear-

ing in the court below, so that all we now have to consider are claims 5, 11, 12, 13, and 18 of No. 240,546, issued to John Reece, April 26, 1881. The main question relates to the proposition that this patent can in no event cover a machine of which the frame is stationary and the plate moves. It grows out of the fact that in the specifications and claims are many expressions indicating that the frame moves and the plate is fixed. A part of the preamble is as follows:

"This invention relates to sewing machines for stitching buttonholes, and is an improvement upon that class of the said machines wherein the stitching mechanism is made to travel first along one side of the buttonhole slit, then about the eye, and along the other side of the slit."

The fifth claim also contains the following: "Whereby the needle bar, by the movements imparted to it longitudinally and laterally of a buttonhole by the said frame, is caused to travel backward." Other expressions of like character appear, with more or less positiveness and fullness, in nearly all the other claims, and in various parts of the specifications; and nowhere throughout the patent is found any indicating that the frame might be fixed and the plate movable.

Theoretically, an inventor, in taking out a patent under the statutes of the United States, subtracts and adds nothing from or to his actual invention. The proceedings recognize his incipient ownership, and theoretically they constitute only a division of time, by which there is carved out of the entire estate a holding for a period of years for the inventor, and the fee is left to the public. Thus his patent is not at all akin to the king's grant, which must be expressed "ex speciali gratia, certa scientia, et mero motu regis," or be interpreted against the subject who receives it. Except for the provisions which, for public interests, require in a patent a description and claim, the same unrestricted rules of the common law would protect an inventor's statute right as are relied on to support a trade-mark or business good will. Nevertheless, with reference to patents, the courts are necessarily subject to the restraints arising from the incorporation into them of the description and claim which the statutes require. In interpreting these, however, the rule must be accepted that it is to be presumed the inventor did not intend to split up his invention. This is only an application of the ordinary rule of interpretation that transactions are to be construed in the light of all the circumstances and of the apparent purposes of the parties to them. Specifications and claims have not yet fallen into such settled forms as to enable the courts to construe them, in any considerable part, with such certainty as they construe many words and phrases in formal instruments at the common law; but, on the whole, the entire subject-matter must be taken together for effectuating the true purpose of the transaction, as contracts and wills, which are so frequently drawn informally, are usually construed. The ordinary rule that if by a literal construction an instrument would be rendered frivolous and ineffectual, and its apparent object frustrated, a different exposition will be applied if it can be supported by anything in it, requires that words which re-

late to what may be held nonessentials, however much multiplied, shall not be permitted unnecessarily to control the sense. For the most part, such words are merely illustrative, or are used through inadvertence. On the other hand, it is true that words and phrases which might have been omitted on the presumption that they relate to nonessentials, may be introduced in such direct and positive manner as to leave the courts no option except to regard them as affecting the objects and limitations of the instrument in question. Especially may this be so when words which otherwise might be regarded as unimportant are introduced by the way of amendment. This is a common rule, which perhaps has been illustrated more frequently with marine insurance policies than elsewhere. There is no doubt that if into an instrument which has been prepared and submitted additional words are subsequently introduced by mutual consent, greater effect may sometimes be attributed to such words than otherwise would be given them; for they then become the immediate language selected by the parties, and may be assumed to have been especially within their intention. The leading rule which we have given has been constantly restated by the text writers and the courts as having full application to patents. They make use of such expressions as "ut res magis valeat quam pereat;" that "a patent should be construed in a liberal spirit, sustaining the just claims of the inventor;" that the titles by which patents are held "should not be overthrown upon doubts or objections, capable of a reasonable and just solution in favor of their validity;" that "in construing a patent the court will remember that the specification and claims are often unskillfully drawn;" and that "the claim shall be construed, if possible, to sustain the patentee's right to all that he has invented." It is true the general rules we have stated include the subordinate principle, which applies everywhere, that they are not to be "carried so far as to exclude what is in the patent, or to interpolate anything which it does not contain." It is impossible, however, to carry this to the extent of applying to patents as fully as it is applied to instruments in general, the maxim. "Enumeratio unius exclusio alterius." With the aid of the doctrine of equivalents, the courts are constantly engrafting on specifications and claims what they do not contain in the same sense in which the letter of ordinary instruments is required to contain matter on which the parties rely. To extend, in disregard of this fact, the rule against interpolations to any particular case, requires either that the patent relate to such mere matters of form or detail that interpretation by exclusion becomes just and reasonable, or that the specifications and claims be so phrased as in fact to contain a clearly intended exclusion, or the equivalent thereof. In the opinion of the court, the ingenious presentation of the defense in this case overlooks this last principle. The defense claims, that, on account of the numerous expressions to which we have referred, the patentee was limited to machines in which the frame travels and the plate remains at rest. It must be conceded that, taking these specifications and the claims as a whole, they show that Reece had present

in his own mind, at the time of his application, a machine with a movable frame and a fixed plate. But, if this is all there is of it, and if this is sufficient to establish the defense, the question arises, where does the doctrine of equivalents come in?

The most important parts of the case at bar are within the 'four corners of the principles we have stated. The court has no doubt that Reece was the inventor of nearly everything, if not everything, demanded by the Reece Buttonhole Machine Company in the case at bar, and was entitled to a patent therefor; and the question is whether, by reason of the peculiar phraseology of his specifications and claims as first drawn, or by reason of the making of certain amendments during the progress of his application through the patent office, Reece, notwithstanding the rules of interpretation entitle him to a favorable construction, has limited himself to a mechanism in which the frame travels; or whether, if he has thus expressed the literal terms of his patent, he has further so limited himself as to deprive himself of the benefit of the law of equivalents with reference to a machine in all respects a copy of his actual invention as shown in his patent, except as to the nonessential characteristic that the frame remains at rest, and motion is given to the plate. There may be reasons for finding that Reece was the inventor of the entire machine, with numerous functions, in somewhat the same way in which Morley was such inventor, as determined in Sewing Mach. Co. v. Lancaster, 129 U. S. 263, 9 Sup. Ct. 299. It is, however, so clear that Reece's claims do not cover the machine as a whole, but only various parts of it, that all the propositions made in his behalf having a different aspect fail to assist us. Yet Reece was clearly far in advance of those who preceded him, and entitled to the full benefit of whatever may be deduced from that fact.

In Manufacturing Co. v. Adams, 151 U. S. 139, 144, 14 Sup. Ct. 295, the court said:

"But when, in a class of machines so widely used as those in question, it is made to appear that at last, after repeated and futile attempts, a machine has been contrived which accomplishes the result desired, and when the patent office has granted a patent to the successful inventor, the court should not be ready to adopt a narrow or astute construction, fatal to the grant."

This applies directly to the facts of the case at bar. In Miller v. Manufacturing Co., 151 U. S. 186, 14 Sup. Ct. 310, the court, in laying down the latest, and, to our thinking, the best, expression of the rule touching so-called "pioneer patents," used the following language:

"The range of equivalents depends upon the extent and nature of the invention. If the invention is broad, or primary in its character, the range of equivalents will be correspondingly broad, under the liberal construction which the courts give to such inventions."

The practical effect of this defense is to maintain, in substance, that the entire novelty of Reece's fifth claim, which we will use for illustration, turns on the fact that the plate is fixed and the frame moves. In other words, Reece stands no better, practically, on the construction put by the defense on this claim, than if he had found

a stitching mechanism in all respects the same as that invented by him, with all the elements which go into it, but anticipating him, and had combined it with a fixed plate. As the principle of his stitching mechanism is clearly such that the relative movements between it and the plate are essential, while the absolute movements—that is, whether the plate moves or the frame moves—are nonessential, the proposition of the defense, if maintained, destroys, through the phraseology of the application and claims touching matters thus nonessential, the entire value of this most important, useful, and hitherto profitable invention. A suggestion of such triviality as is involved in a construction which will produce such a result cannot be well accepted.

Among all the cases brought to our attention we have seen none that goes to this extent with reference to the class of inventions described in the extract from Miller v. Manufacturing Co., ubi supra. The citations which we have made from Manufacturing Co. v. Adams, ubi supra, and Miller v. Manufacturing Co., ubi supra, and others which we will hereafter make use of, ought plainly to lay out of the case all rules of interpretation found in the decisions of the courts or in text-books which appertain solely to inventions plainly and essentially narrow, and ought thus to sift out easily, and render it unnecessary for us to examine, a considerable number of the authorities brought to our attention. We lay aside at this stage all decisions growing out of the fact that amendments were made in the application on its passage through the patent office. This includes Union Metallic Cartridge Co. v. U. S. Cartridge Co., 112 U. S. 624, 5 Sup. Ct. 475, and all others of that character. We do not mean by this, however, to reject, in considering this first question, what was thus made new; but we take the specifications and claims as they now stand, without reference to the fact that they were changed at any stage. We also lay aside all those in which the court, after all, with the aid of the entire case, came down to the essence of the invention, and held in substance that the claims covered it fully. Among others of this class appear to be Brooks v. Fisk, 15 How. 212; Klein v. Russell, 19 Wall. 433; Vulcanite Co. v. Davis, 102 U. S. 222; Bene v. Jeantet, 129 U. S. 683, 9 Sup. Ct. 428; and Gordon v. Warder, 150 U. S. 47, 14 Sup. Ct. 32. This sifting leaves, however, a number of cases which, if they stood alone, might be regarded as carrying so far the effect of a literal construction of specifications and claims as would compel us to find for the defense on the proposition in question. Those on which the defense relies which use the most striking expressions are Keystone Bridge Co. v. Phoenix Iron Co., 95 U. S. 274; Fay v. Cordesman, 109 U. S. 408, 3 Sup. Ct. 236; Manufacturing Co. v. Sargent, 117 U. S. 373, 6 Sup. Ct. 931; and Dryfoos v. Wiese, 124 U. S. 32, 8 Sup. Ct. 354. And we may also add Burns v. Meyer, 100 U. S. 671, and Huber v. Manufacturing Co., 148 U. S. 270, 13 Sup. Ct. 603. Another extreme case of the same character is Brown v. Manufacturing Co., 6 C. C. A. 528, 57 Fed. 731, decided by the court of appeals in the sixth circuit. Against these cases it is sufficient to put Winans v. Denmead, 15

How. 330. That, so far as concerns the case at bar, this decision is still recognized as law, is apparent from the fact that it is cited, without disapproval of any part of it, in Sewell v. Jones, 91 U. S. 171, 183; Eddy v. Dennis, 95 U. S. 560, 569; Werner v. King, 96 U. S. 218, 230; Electric Co. v. La Rue, 139 U. S. 601, 606, 11 Sup. Ct. 670; and Hoyt v. Horne, 145 U. S. 302, 309, 12 Sup. Ct. 922. In Werner v. King and Hoyt v. Horne it is cited and accepted with reference to the very pith of the matters which we are now considering. It will be noticed that Winans v. Denmead is thus reaffirmed at later dates than the cases on which the defense relies, and that it comes much closer to the case at bar than any one of them is too apparent to need any explanation at length. In fact, the analogy is as close as could be expected to be found in any cases whatever. Winans v. Denmead related to the peculiar construction of cars for the transportation of coal, and the patent was granted in 1847, after the enactment of all the statute provisions the existence or re-enactment of which the defense can rely on. Railroad Co. v. Mellon, 104 U. S. 112, 118. The specifications in Winans v. Denmead described only a conical form, and the claim (page 342) was, by its letter, strictly limited to the frustrum of a conc. There was nothing whatever in the patent to show that the patentee ever had in his mind any form except the conical. The alleged infringement was by use of the octagonal form. Yet the court made the clear distinction appearing on page 343, as follows:

"Undoubtedly there may be cases in which the letters-patent do include only the particular form described and claimed. Davis v. Palmer, 2 Brock. 309, Fed. Cas. No. 3,645, seems to have been one of those cases. But they are in entire accordance with what is above stated. The reason why such a patent covers only one geometrical form is not that the patentee has described and claimed that form only; it is because that form only is capable of embodying his invention; and, consequently, if the form is not copied, the invention is not used. Where form and substance are inseparable, it is enough to look at the form only. Where they are separable, where the whole substance of the invention may be copied in a different form, it is the duty of courts and juries to look through the form for the substance of the invention,—for that which entitled the inventor to his patent, and which the patent was designed to secure. Where that is found, there is an infringement; and it is not a defense that it is embodied in a form not described, and in terms claimed by the patentee."

The court further remarked—which is a general rule, applicable to the case at bar—as follows:

"Patentees sometimes add to their claims an express declaration to the effect that the claim extends to the thing patented, however its form or proportions may be varied. But this is unnecessary. The law so interprets the claim without the addition of these words."

It is not necessary for us to reconcile case by case the expressions relied on by the defense, which, as interpreted by it, are not in harmony with the conclusions or the expressions in Winans v. Denmead. Very likely they can all be harmonized by following out the distinctions made by us in our references to Manufacturing Co. v. Adams, ubi supra, and Miller v. Manufacturing Co., ubi supra, and by noting the peculiar circumstances of each case. In fact, we think there is nothing to be deduced from any of the decisions

which goes beyond the illustrative paragraph in Walker on Patents (2d Ed. § 350), as follows:

"But where a patentee states in his specification that a particular part of his invention is to be constructed of a particular material, and states or implies that he does not contemplate any other material as being suitable for the purpose, it is not certain that any other material will be treated by a court as an equivalent of the one recommended in the patent."

However this may be, Winans v. Denmead leaves sufficient room for the application to the case at bar of the general rules of construction, and those relating to equivalents, which we have stated.

Some of the most important inventions in special arts have come from persons unskilled in those arts, and who, therefore, had no knowledge of the possible equivalents; so that it would involve improbability to assume that they had present in their own minds, at the time of the application, any matters of form except those incorporated in it. The rules cited from Winans v. Denmead, ubi supra, are needed to protect not only this class, but all others who have made valuable inventions, and who, through their own ignorance, or for any other reason, have not understood, or have overlooked, possible equivalents. Without attempting the unnecessary discussion of case by case, it is enough that almost every patent in which this question can arise lies between the expressions in Winans v. Denmead, ubi supra, on the one hand, and those relied on by the defense on the other. Winans v. Denmead clearly goes as far in its direction as the case at bar. Applying the principles of construction and the law of equivalents already stated in the way in which we are bound to apply them, there is not sufficient in any or all of the expressions in the patent at bar relied on by the defense to justify us in holding that they amount to such a positive exclusion, arising either from the nature of the invention or from the necessary force of the words themselves, as will defeat a charge of infringement of all the claims in controversy, merely on account of a change in the method of producing relative movements of the parts, involving in itself no invention and producing no result essentially new.

Some of the cases relied on by the defense strengthen these conclusions by the reflex light of the distinctions they make. Snow v. Railway Co., 121 U. S. 617, 7 Sup. Ct. 1343, held the patentee strictly to the details of his combination in question, because, as shown on page 630, 121 U. S., and page 1343, 7 Sup. Ct., those details, for the reasons there stated, were essential parts. Sargent v. Lock Co., 114 U. S. 63, 5 Sup. Ct. 1021, runs back, so far as this point is concerned, to Water-Meter Co. v. Desper, 101 U. S. 332; and so, also, does Fay v. Cordesman, 109 U. S. 408, 3 Sup. Ct. 236, already cited. In Water-Meter Co. v. Desper, page 336, the court stated, touching a certain crank shaft which was in question, that it could not say that it was an immaterial part of the combination, and continued:

"The patent, as it stands, occupies very narrow ground. It requires the presence of every one of the elements specified in the combination secured by it."

On page 335 this rule of interpretation is applied generally to combinations, and in this form the rule is traced through to the latest

case named.    What is meant by the word "combination," here and
in Fay v. Cordesman, may not be easily determined; but it is very
certain Reece invented something more than a mere combination
as it existed in those cases.

The Corn-Planter Patent, 23 Wall. 181, also supports the conclusion
which we have reached.    The court said (page 221):

"The only pretense on which it"—that is, the alleged infringing machine—
"can be claimed to be different is that the framework of which it is con-
structed is not the kind of framework described by Brown in his specification,
namely, 'without gearing, without spoked wheels, and other expensive fixtures,
and resembling a drag or sled more than it does a carriage or wagon in its
main or general construction.'    By this description Brown was evidently at-
tempting to show how simply and cheaply the thing could be made, not that
it was to be confined to that specific form.    It might as well be contended that
he intended to confine his invention to wood, and that a machine made of
iron or other metal, though made in precisely the same form, would not be an
infringement, because it would not have the same quality of cheapness and
simplicity which he describes."

Hoyt v. Horne, 145 U. S. 302, 12 Sup. Ct. 922, is still more striking.
The words in the claim in that case, "consisting in circulating the
fibrous material and liquid in vertical planes" (page 304, 145 U. S.,
and page 922, 12 Sup. Ct.), refer back to the improvement itself,
limit it grammatically and literally, and, so far as the mere letter
of the claim is concerned, were apparently quite as material a part
of it as the words in question in the case at bar.    Yet (page 308,
145 U. S., and page 922, 12 Sup. Ct.) the court rejected them, for the
reasons there stated, and which need not be recited in this opinion.

The preamble of the patent, already cited, has been brought es-
pecially to the attention of the court, in that it specifically points
out the invention as relating to the class of machines "wherein the
stitching mechanism is made to travel," etc.    There is ground for
maintaining that this word "travel," in this connection, had in mind
the relative motions, as it is frequently thus used by persons ac-
customed to mechanical operations; and also that this part of the
preamble had in mind a classification of machines as between those
in which the material is held firmly to the plate and the relative
movements are automatic, aided by a reciprocating needle bar, and
those in which the material is turned by the hand.    It is, however,
not necessary to determine this.    The preamble states that Reece's
invention was an improvement on the class of machines which it
names, whatever that class may be; but this does not exclude the
truth that it would be an improvement on every other class of
machines to which it could be applied.    Still keeping in mind the
distinction between a broad invention and a narrow one, it does not
follow that because the inventor, if his invention was of the former
class, declared it to be available for a certain use or machine, and
had present in mind only that specific use or machine, it might be
taken by others, without restriction, for other uses or other ma-
chines.    On the other hand, the rule is clear that ordinarily a pat-
entee who is first to make an invention is entitled to his claim for
all the uses and all the advantages which belong to it, so far as the
new application does not itself involve further invention.    Roberts
v. Ryer, 91 U. S. 150, 157; Stow v. Chicago, 104 U. S. 547, 550;

Miller v. Manufacturing Co., 151 U. S. 186, 201, 14 Sup. Ct. 310. The rule was laid down clearly, although perhaps as a dictum, in Electric Co. v. La Rue, 139 U. S. 601, 11 Sup. Ct. 670, already referred to. On page 606, 139 U. S., and page 670, 11 Sup. Ct., the court, in connection with a reference to Winans v. Denmead, said that a certain expression in it, which the court quotes, "amounts to a declaration that the application of the patented device to another use, where such new application does not involve the exercise of the inventive faculty, is as much an infringement as though the new machine were an exact copy of the old." Indeed, the whole of the case at bar, so far as we have gone, might, on sound principles, be put on the single proposition of what is known as the "rule of double use," so far as it can be availed of to protect the patentee of a broad invention.

We now come to the effect of the fact that the claims and specifications were amended during the progress of the application through the patent office. It must be admitted, as already said, that what is thus done may have a special weight beyond the effect of the same words appearing in the application as originally drawn, because, whatever may be inserted or stricken out under such circumstances may ordinarily be regarded as especially selected by the parties to the transaction. It is as though by agreement the phrases thus made were emphasized. Nevertheless it defeats the very essence of this rule to extend it to what was inserted inadvertently, or to push the construction of what was thus inserted in one direction, when it is plain from the whole transaction that the parties inserting were looking in another. There is a further consideration which cannot be overlooked. In transactions between private parties, and, indeed, in ordinary transactions between the public authorities and private parties resulting in contracts or grants, the rules of equity may be invoked, on a proper judicial issue, to correct or supply what is erroneous, or was omitted through inadvertence; but if the position of the defense is correct, and the decisions of the supreme court touching this point lay down so rigid a rule as the defense maintains, a patent cannot be relieved on this account and in this particular, except it be by application for a reissue, which is not a judicial proceeding, nor in any of its phases as far-reaching as the relief granted in equity with reference to other matters. Courts ought, therefore, to be the more careful, under circumstances like those at bar, to give a patentee the benefit of all the equities which can be raised in his behalf, by any reasonable implication, from what appears on the face of the amendments, or from the transaction as it passed through the patent office.

The case shows numerous amendments at various stages, but we have no occasion to consider any of them except the following: The first claim, at one stage, contained the words, "and means to change the relative positions of the bedplate and framework longitudinally." These were objected to by the examiner for the following specific reason, given by him: "As no means is shown and described for moving the bedplate relatively to the framework, as the claim would seem to imply." Thereupon the words objected to were

stricken out, and those were inserted which now appear, "and means to move such framework longitudinally upon said bedplate." For the same specified reason a similar change was made in the eleventh claim. The twelfth claim was also required to be amended by including means for moving the cutting bed and frame longitudinally, on the ground, specified by the examiner, that otherwise the combination covered by the claim would be inoperative, and incapable of accomplishing any useful result or function. The thirteenth claim, which was objected to by the examiner as being for an incomplete combination, was largely modified, the expression which now appears touching "the movable framework" being inserted, with others. The fifth claim was amended only by inserting the words "of a buttonhole" where they appear after the word "laterally." The eighteenth claim is entirely new. Whatever other amendments there were need not be noticed.

The patent office record shows no reason for requiring these amendments, so far as concerns the effect of the question we are now discussing, except those already stated. The specifications did show one method of putting the invention and all its parts into practical operation. The theory of the examiner was that the claims must be limited to correspond with the form of operation explained. The extracts which we have made from Winans v. Denmead, 15 How. 330, and other citations which might be made, establish the well-known rule that this was erroneous, unless as a mere matter of detail in the practice of the patent office, depending on the varying judgments of different examiners as to the clearness with which the operation of machines should be set out.

No question of novelty was made, and no other issue which brought to the attention of the inventor any matter of substance. In Ball & Socket Fastener Co. v. Ball Glove-Fastening Co., 7 C. C. A. 498, 58 Fed. 818, this court, in considering the principle now under consideration, said:

"The rule touching the effect of such amendments has been several times laid down by the supreme court in patent causes, although it is only a peculiar application of the general principles of law relative to the interpretation of instruments. In the case at bar the amendments relate to the very pith and marrow of the alleged improvement, touch directly the question of novelty, and were understandingly and deliberately assented to; so that the rule of interpretation referred to undoubtedly applies."

We do not see that the law requires us at present to go any further, or to qualify this statement of the rule; although, of course, its application, where the invention is in mere matters of form or detail, would be more freely made than where it is of a broad character.

The following cases, we believe, are all where this rule has come before the supreme court, the first being Leggett v. Avery, 101 U. S. 256, decided October term, 1879, and the last Morgan Envelope Co. v. Albany Perforated Wrapping Paper Co., 152 U. S. 425, 14 Sup. Ct. 627. Leggett v. Avery, so far as it appertains to this rule, contains only dicta, as in that case there had been an actual disclaimer, on an application for a reissue, of the whole of

five claims in the original patent, and the case turned on the effect of that express disclaimer. In Sargent v. Lock Co., 114 U. S. 63, 5 Sup. Ct. 1021; Shepard v. Carrigan, 116 U. S. 593, 6 Sup. Ct. 493; Sutter v. Robinson, 119 U. S. 530, 7 Sup. Ct. 376; Crawford v. Hey-singer, 123 U. S. 589, 8 Sup. Ct. 399; Watson v. Railway Co., 132 U. S. 161, 10 Sup. Ct. 45; Roemer v. Peddie, 132 U. S. 313, 10 Sup. Ct. 98; Caster Co. v. Spiegel, 133 U. S. 360, 10 Sup. Ct. 409; Yale Lock Manuf'g Co. v. Berkshire Nat. Bank, 135 U. S. 342, 10 Sup. Ct. 884; Dobson v. Lees, 137 U. S. 258, 11 Sup. Ct. 71; Corbin Cabinet Lock Co. v. Eagle Lock Co., 150 U. S. 38, 14 Sup. Ct. 28; Knapp v. Morss, 150 U. S. 221, 14 Sup. Ct. 81; and the latest case, Morgan Envelope Co. v. Albany Perforated Wrapping Paper Co.,—there were direct issues of novelty, or of interference, based on specific prior patents or pending applications, to which the inventor yielded. Therefore, in each of these cases there was a fair issue, formulated and understood by the applicant for the patent, requiring him clearly to yield directly a portion of what he claimed; and the effect of his yielding could not be mistaken. In Union Metallic Cartridge Co. v. U. S. Cartridge Co., 112 U. S. 624, 5 Sup. Ct. 475, the issue was no less distinct, although it came in a different form. It appeared that the patentee had applied on a reissue for the same subject-matter which was disallowed him by the supreme court, but the point was distinctly made by the commissioner that it involved "a substantially new and different invention" from anything embraced in the original patent. In Vulcanite Co. v. Davis, 102 U. S. 222, which was decided with express reference to Leggett v. Avery, ubi supra, it appeared (page 228) that the subject of controversy at the patent office was distinctly as to what the invention covered, and as to what claim should be allowed. The court said there could be no doubt what the patentee understood he had patented, and that both he and the commissioner regarded it to be "for a manufacture made exclusively of vulcanites." The issue was plain, formal, and essential; yet the court did not rest the case wholly on that proposition, but mainly on the ground that what occurred at the patent office tended to confirm the conclusions to which the court had otherwise arrived in interpreting the patent. In Royer v. Coupe, 146 U. S. 524, 13 Sup. Ct. 166, an entire claim was rejected, and the rejection acquiesced in. This was also apparently put on the ground of want of novelty; but, however that may have been, the essence of the transaction was plainly the same as though there had been a formal disclaimer after a patent had been obtained, as was the case in Leggett v. Avery, ubi supra. In no place has the rule been thoroughly discussed by the supreme court, and its modifications, limitations, and practical application determined. It has grown up without much discussion from Leggett v. Avery, ubi supra, which was a case on a reissue, and, as already said, involved a formal disclaimer of five specific and entire claims. Under all the circumstances, the case at bar is clearly distinguishable, in that it presented no direct issue of novelty or invention, and the amendments came in only incidentally, and in reference to an incidental matter.

In conclusion, therefore, touching all which appears on the face of the patent with reference to the movability of the frame and the fixedness of the plate, including whatever emphasis can be added by reason of the acquiescence of Reece in the amendments proposed at the patent office, we do not find enough to require us to refuse to give him the benefit of the favorable rules we have explained.

We now come to the especial consideration of the several claims. The fifth claim was the successful conclusion of numerous and expensive efforts to stitch automatically a buttonhole in the form in which it is ordinarily desired,—that is, with an eye. This had never been accomplished. Those machines whose work in stitching were automatic were unable to form the eye, and those which formed the eye accomplished this only with the aid of the clumsy and slow operation of turning the material with the hand. We do not think it necessary, either with reference to this claim or any other, to proceed at length on the question of novelty. The single fact that so valuable a patent as this, where so large interests were at stake, and such heavy expenditures had been made in vain, as is shown by the record, for accomplishing what Reece accomplished, had received the continuous and uniform acquiescence of the public and the trade for a period of nearly 10 years, and until the efforts of the respondents below, affords sufficient reason for not prolonging this opinion by an analysis of the alleged anticipatory matters, or by detailed explanations in support of our conclusions that none of them in fact anticipated Reece. This line of defense has been pressed mainly against the fifth claim, but clearly the device to which it relates accomplished what none of the older buttonhole machines accomplished, and it, its method of operation, and its purpose lie in a different field from the invention of Bonnaz, and from all the other earlier mechanisms except those appropriate to the stitching of buttonholes. The essential feature of this claim is the so-called "compound movement" given the needle bar, the result of simultaneous longitudinal and lateral motions. This alone was, of course, old and common in the arts; yet the suggestion of its application to this purpose, combined with the mechanism devised therefor, constitute a patentable invention of a fundamental character, highly meritorious, and one to be protected by a liberal construction. So far as this claim is concerned, we have no doubt that the rules which we have laid down fully apply, and that Reece is entitled to the benefit of the invention, without reference to the changed method shown in the case of producing the relative movements between the frame and the plate.

The elements specified in the fifth claim do not constitute an operative mechanism without the aid of a reciprocating needle bar, or something which will supply its need, and perhaps also not without the spreader. The eighteenth claim covers a reciprocating needle bar, and the twelfth a spreader, and each are fully explained in the specifications. The fifth claim falls within that class where reference may be made to the specifications to supply in a claim what it is plain to every one skilled in the art is a necessary incident.

Seymour v. Osborne, 11 Wall. 516, 547; Day v. Railway Co., 132 U. S. 98, 102, 10 Sup. Ct. 11. However, no question was raised on this account, and we refer to the matter simply in order to make clear our conception of the scope of the claim. Infringement of the fifth claim is hardly contested, except on the ground of the propositions touching its construction and effect which we have rejected; and, so far as concerns it, we must order a decree for the complainant below.

The eleventh, twelfth, and thirteenth claims relate to the cutting and spreading mechanisms, and the "stop" devices. Each is undoubtedly to be construed as in combination with a stitcher in a buttonhole machine; and Reece was the first to combine any of these in such way that all its elements should be operated in their proper order, by mere mechanical power. The defense urged against these claims is mainly the same as that urged against the fifth. Having disposed of what could be raised by that defense, the court considers the alleged structural differences between Reece's and the infringing machines not material. The majority of the court are of the opinion that Reece has made these operations of cutting, spreading, and stopping automatic in combination with the machine as a whole, and that his invention in that respect is so fundamental and meritorious as to require the application to the eleventh, twelfth, and thirteenth claims of the same rules which we have applied to the fifth.

In view of the state of the art, the eighteenth claim cannot be broadly construed, and it must be held to be fully limited by the words, "substantially as described." This limitation, however, relates to what concerns this particular device. Lake Shore & M. S. Ry. Co. v. National Car-Brake Shoe Co., 110 U. S. 229, 235, 4 Sup. Ct. 33. Therefore we find nothing in these words which restricts this claim to a machine in which the frame moves. To give such an effect to the word "carries" as is claimed is more for the pundit than the courts. It is as commonly used in all kindred matters to mean supporting without movement as supporting with it. We are not required to give it a narrow interpretation for the purpose of depriving the inventor of any part of his invention. Nor are we constrained by any well-settled or just rule of construction to import phraseology from other claims for the same purpose. Except in the particulars covered by these propositions, we do not understand that there is any question of infringement of this claim, even when narrowly construed.

Decree of the circuit court reversed. Case remanded to that court, with instructions to enter a decree for an injunction, and an account on claims 5, 11, 12, 13, and 18 of appellant's patent, No. 240,546, issued to John Reece, April 26, 1881, and for further proceedings in accordance with law.