PILLSBURY-WASHBURN FLOUR-MILLS CO., Limited, et al., v. AMERICAN WIRED-HOOP CO.

(Circuit Court, D. Minnesota.    November 30, 1897.)

1. PATENTS—INVENTION—MACHINE FOR PRINTING BARREL HEADS.
    The Hooper patent, No. 557,582, for a printing press designed especially for printing on barrel heads, is void for want of invention, in view of the prior state of the art.

2. SAME—MACHINE FOR PRINTING ON BOARDS.
    The Hooper & Hollingsworth patent, No. 359,972, for a machine for printing on boards, and which is especially designed for printing in two colors at one operation, by a combination of two type cylinders, and elastic-face feed rollers between them, construed, and *held* infringed as to the first, second, and third claims, and not infringed as to the sixth claim.

This was a suit in equity by the Pillsbury-Washburn Flour-Mills Company, Limited, and Francis X. Hooper, against the American Wired-Hoop Company, for alleged infringement of letters patent No. 359,972, issued March 22, 1887, to F. X. Hooper and W. Hollingsworth, for a machine for printing on boards, and also No. 557,582, issued April 7, 1896, for a printing press designed especially for printing barrel heads.    The patent of 1887 is adapted for printing upon boards with two colors in one continuous operation.    In the specifications the patentees say:

"One description of boards which are to be printed by this machine are used for the ends of boxes; such boxes as are employed for packing goods of various kinds,—notably, canned goods, such as oysters, fruits, etc.    Instead of stenciling upon the end of the ready-made box, to denote its contents, the board designed for the box end is printed previous to being made up into the box.    Where boxes are made up in large numbers for packing special articles, this plan is found more economical, besides producing neater and better work.    Another kind of boards which may be printed to advantage are those used for advertising signs."

Fig. 1 is a vertical, longitudinal section of this machine.    In his description the patentee says:

"Referring to Fig. 1, 1 is the frame of the machine.    2 is the bed.    3 is a feed chain.    4 and 5 are sprocket wheels mounted in a frame, by which the feed chain is driven.    7 and 8 are two printing rollers suitably geared with the driving mechanism, so as to turn in the proper order in relation to the

Fig. 1.

Fig. 3.

feed. 9, 9, 9, 9, are feed knockers secured upon the feed chain in the manner shown in Figs. 3 and 4; and, as shown in those figures, the knocker is approximately semicircular in shape, and conforms in outline to a barrel head which is divided into several pieces. In order to feed a barrel head or other board divided into several parts on the feed belt, it is necessary to provide a knocker of peculiar form, conforming in shape to the barrel head or other board, and this feed of an irregular shape presses all the pieces of the board forward at the same time."

The claims read as follows:

"(1) In a machine for printing barrel heads consisting of several pieces, the combination of printing rollers, a curved barrel-head holder, being of the same radius as the barrel head, and opening in a direction away from the direction of the feed, and a feed belt carrying an oppositely curved knocker, also of the same radius as the barrel head,—the curved knocker being arranged to engage the ends of the boards forming the barrel head to be printed, and to hold them in a circular form while being carried to the print-

ing rollers,—as and for the purpose specified.   (2) In a machine for printing barrel heads consisting of several pieces, the combination of printing rollers, a curved barrel-head holder, semicircular in form, being of the same radius as the barrel head, and opening in a direction away from the direction of the feed, and a feed belt carrying an oppositely curved knocker, semicircular in form, also of the same radius as the barrel head,—the curved knocker being arranged to engage the ends of the boards forming the barrel head to be printed, and to hold them in a circular form while being carried to the printing rollers, as and for the purpose specified."

Fig. 4 is a vertical, longitudinal section of this machine.

"The letter A designates the frame and table;  B, the drive pulley.   This machine has two type cylinders, C, C', both mounted in a movable frame, D, above the table.   Each cylinder is designed to work a different colored ink, so that a board, a, passing below the cylinders, will receive an imprint of

two colors. Two ink receptacles, b, b', are provided above the cylinders, and two sets of ink-distributing rollers, c, c', of suitable or well-known construction in printing machines, are also provided. * * * Two feed rollers, each having an elastic face, n, bear down on the upper side of the board, a, so that the board is between the lower roller, m, and the two upper ones, n. The two upper rollers, n (see Fig. 5), are narrow, and each bears on the surface of the board, a, along one edge. These rollers are made of metal, n', and have a rubber ring, n, around the metal part. The rubber-ring part comes in contact with the board, and as it has a good grip thereon the feed movement of the board is insured, and the rollers avoid defacing the imprint made by the first cylinder."

Claim 6 of this patent reads as follows:

"In a machine for printing boards in two colors at one operation, the combination of two type cylinders, and elastic-face feed rollers between the said two cylinders, for the purpose set forth."

In patent No. 557,582 the patentee says:

"The primary object of this invention is to print any desired matter upon a barrel head composed of several pieces, and maintain the barrel head in circular form or alignment while being printed, so as to cause the printed matter to register when the head is put in a barrel. To accomplish this result, the barrel heads are placed in the receiver, one upon the other, with the divisions between the parts forming each head parallel to the feed. This is an essential feature in the mode of operation. The holder, containing a number of barrel heads, is curved so as to fit the circle of the barrel head, and the boards are pressed into it when placed in the machine so as to bring them into circular alignment, and force the edges of the several pieces together closely. When the bottom barrel head, consisting of several pieces, drops onto the table between the feed chains, the pieces are, in consequence of the alignment produced by the holder, in circular form. While thus lying upon the table, they are struck by the curved knocker [Fig. 3], which is of the same radius as the curve of the barrel head, and fed forward by it, still being retained in circular alignment, and the edges of the pieces pressed closely together by the curve of the knocker, and are thus held by the curved knocker in circular alignment while being carried to the printing and feed rollers, by which they are caught, and printed in this position. It will be seen that the position of the boards, and the maintenance of that position in a divided barrel head, is of the utmost importance."

Paul & Hawley, for complainants.
Walter H. Chamberlain, for defendant.

LOCHREN, District Judge. I shall have to pass upon this question at the present time, as, owing to pressure of business, I am unable to take the case under consideration. My impression is that the patent of 1896 is not valid, and that, in view of the state of the art at that time, it contains no feature that was novel. It appears that, before that time, conveyors had been made to correspond in shape with the article of wood to be printed, so as to move it directly forward in the movable frame. They generally printed parts of boxes, which were rectangular pieces of wood, using a hopper which was square in shape; and the use of the square hopper showed that it was obviously necessary to have something which would keep these pieces of wood in proper place to be taken by the conveyor under the printing press. The changes in the conveyors previously used show that it was understood to be necessary that they should be so fashioned as to convey the articles to be printed without moving to one side or the other under the roller that was to do the printing. It

would be obvious to anybody who was engaged in that business that it would be necessary to carry the boards forward directly under the portion of the roller that was to make the impression upon them. So, I think, as long as a hopper was necessary there, and was used to insure the placing of those barrel heads under the right portion of the roller, the use of a circular form of hopper would occur to any one as the kind necessary to be used for that purpose.

With reference to the sixth specification of the patent of 1887, I think it is obvious that there is no infringement of that. That is for a feed roller between two cylinders for the purpose set forth, which was to carry, or assist in carrying forward, from one cylinder to the other, the wood to be printed, as this endless conveyor was used in the machine. Although it did at the same time perform the service that is performed by the defendant's roller, still that is not what it was made for, nor the purpose set forth. The defendant's roller does not operate as a feed roller. It is simply an idle roller, and does not press particularly upon the wood to be moved, as it rests in the slots, although it may, and practically does, serve to keep the wood from moving from one side to the other.

The most serious question is with reference to the first, second, and third specifications of complainants' patent, which are really one, as far as they need be considered in this case, and is as to whether there is in the defendant's machine an infringement of these specifications of the patent owned by the complainants. It seems that, before that patent, printing in two colors was done, as shown by the Hinds machine, but by virtually separate machines; and this machine in question purposes to print boards in two colors at one operation, with one machine, by a combination of two type cylinders, each for a different color,—both cylinders and their inking devices being mounted in the same yielding frame. The cylinders in these machines of complainants and defendant are substantially alike, but the claim on the part of the defendant is that its cylinders are not mounted on the same yielding frame, and therefore do not come within the specification. Although the complainants' machine has the yielding portion in the upper part, containing the type cylinders and the inking devices, while the defendant's machine has it in the lower portion, containing the other cylinders, it seems to be admitted that, if that lower portion of the defendant's machine was so bound together that the yielding would be the same in both cylinders at once, there would be an infringement. Under the authority and the rules cited in the Reece Buttonhole Mach. Co. v. Globe Buttonhole Mach. Co., 10 C. C. A. 194, 61 Fed. 958, as it is called, it does not occur to me that the fact that those cylinders are made to yield, not rigidly together, but one at a time, or only partially together, as they may be pressed upon by that portion of the wood that is moving forward, necessarily makes any special difference, as long as the cylinders are mounted in a frame, and there is a yielding, which, if not the same, is at least an equivalent, practically and mechanically, of that part of the complainants' patent. I am inclined to think that there is an infringement of the complainants' patent in that respect, and for that reason, and to that extent, I think complainants are entitled to judgment.