COBURN TROLLEY-TRACK MFG. CO. v. CHANDLER et al.

(Circuit Court of Appeals, First Circuit. September 14, 1899.)

No. 277.

PATENTS—INFRINGEMENT—TROLLEY TRACKS.

Claim 1 of the Coburn patent, No. 365,240, for an improved trolley track, as narrowed by amendment, while the application was pending in the patent office, to meet the objection of want of novelty and invention, covers only the specific device described, which consists of a tube "having the lower edges curved in towards the median line, and then turned upward, so that the bottom of the tube has a rounded trough at each side of a longitudinal central opening," and is not infringed by a tubular track similar in other respects, but having the sides turned in at right angles, leaving a flat surface for the track on each side of the opening, and fairly adapted to rollers with flat faces.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

For opinion of the circuit court, see 91 Fed. 260.

Arthur v. Briesen, for appellant.

Lester L. Bond (Bond, Adams, Pickard & Jackson and George M. Weed, on the brief), for appellees.

Before COLT and PUTNAM, Circuit Judges, and WEBB, District Judge.

PUTNAM, Circuit Judge. This appeal relates to claim 1 of the patent issued to Lemuel Coburn on June 21, 1887, as follows:

"(1) A trolley track consisting of a tube of substantially rectangular cross section at its upper portion, and having the lower edges curved in towards the median line, and then turned upward, so that the bottom of the tube has a rounded trough at each side of a longitudinal central opening, substantially as described."

The patent relates to two distinct alleged inventions,—the first in trolley tracks, and the second in carriers. The latter is covered by another claim not in issue. The specification states that the purpose of the alleged invention with which we are concerned is "to provide a track of improved construction, particularly in respect to strength." The track is described as constructed from a metal "tube" rolled to the required form. The upper part of the "tube" is flat. It has perpendicular sides, practically at right angles with the upper surface. The lower edges of the sides are bent, to use the language of the specification, "inward and upward, thereby giving to them substantially a half-round form in cross section," leaving a longitudinal slot between them, through which runs whatever sustains the load depending from the carriers. Thus, we have, extending the length of the tube, two parallel, half-round grooves in which the carriers run. The specification further says that this "form and construction," including the parallel, half-round roller-grooves, "constitute special elements of strength, and great resistance against any deflection of the track between its ends, supposing that it is suspended by bolts at said ends," though there may be between the ends a "considerable length of track." It continues that, as the sides of the "tubes" are in line with any load to which the track may be subjected, they "constitute of themselves such a rigid bridge feature of the construction as greatly strengthens the track," and that the half-round roller-grooves "add considerably to such rigidity and resistance to deflection under a load."

On the simplest mechanical principles, it is quite apparent that a track constructed in this way will have comparatively great rigidity with reference alike to perpendicular and horizontal resistances, thus incidentally involving a corresponding saving of material. This seems to be admitted by the respondents, in that they urge on the court that merely to make a device of greater strength is not invention; and it is also admitted by the testimony of Mr. Simpson, the manufacturer of the respondents' infringing structure, who, in speaking of the form in which that structure is constructed, says: "We had various reasons for making it in this form. First, we found it stronger than any other shape, as each bend or corner is equivalent to a corrugation, and adds strength."

The defenses cover the questions of invention and infringement. The device used by the respondents is in all respects like that shown by the patent, except that the turning of the sides "inward and upward," instead of following circular lines throughout, is at first inward at as near a right angle as wrought metal can conveniently be bent, then horizontal, giving a flat tread for the carrier, and then upward on substantially the same lines in cross section as those on which it turns inward. The respondents' device evidently has the advantages of the complainant's construction with reference

to the only point named in the specification,—that is, of strength,—though not to the same extent.   Therefore, on the issue of invention, the special facts of the case might so far support the presumption arising from the granting of the patent as to compel us to hold that the claim is valid, if we could so construe it as to cover the respondents' device as an infringement.   The proceedings in the patent office, shown by the record, prevent our doing this.

The effect of proceedings of this character was so fully considered by us in Reece Buttonhole Mach. Co. v. Globe Buttonhole Mach. Co., 10 C. C. A. 194, 203–206, 61 Fed. 958, 967–970, that we have no occasion to refer to the numerous cases cited by the respondents in reference thereto; overlooking, nevertheless, as they do, the fact that we have thus carefully reviewed this special matter.   The effect of Reece Buttonhole Mach. Co. v. Globe Buttonhole Mach. Co., as shown at the foot of page 969 of 61 Fed., and page 205 of 10 C. C. A., is to hold that such proceedings are of no effect when no direct issue of novelty or invention was involved, or when the amendments made by the applicant came in only incidentally, or in reference to an incidental matter.   The case at bar, however, is clearly not excluded by the rule thus given, because the patent-office records leave an unavoidable impression that the subject-matter of the amendments shown did touch the issues of novelty and invention, and were directly passed on with full understanding as to their effect, alike on the part of the office and the patentee.   The application, as originally made, contained three claims, one of which was broadly for a track having vertical sides, with edges turned "inward," as follows:

"A tubular trolley track, having parallel vertical sides, the lower edges of which are bent inward and upward, thereby forming carrier-roller grooves therein, and having a hanger-slot between said edges, substantially as set forth."

This claim, if allowed, would clearly have been broad enough to cover the respondents' device; but it was rejected, and thereafterwards, in order to save the patent, in lieu of it there was substituted the claim in issue, which contains the words, not in the claim as originally drawn, as follows, "and having the lower edges curved in toward the median line, and then turned upward," and also the words, "so that the bottom of the tube has a rounded trough at each side of a longitudinal central opening."   In addition thereto, the specification, as originally drawn, contained the following:

"If desired, the lower edges of the sides may be turned inward simply at right angles to the latter, and not made of half-round form, thereby constituting suitable bearings for flat-faced carrier rollers."

If this had been allowed to remain in the specification, it would have suggested that the patentee was entitled to cover a track having a flat tread, like the respondents' device; but, after the claim was amended as we have stated, the examiner advised the applicant as follows:

"In view of the paragraph from lines seven to eleven, inclusive [referring to the sentence in the specification which we have cited], in which applicant

describes an equivalent construction, his claims are still met by the references before cited."

Of course, this held up the application, and the result was a communication from the solicitor for the applicant to the commissioner of patents, directing 'the erasure of the sentence objected to.

The complainant maintains that the patentee originally thought he was entitled to a patent for every track with vertical sides and inwardly bent wheel supports, between which a slot was formed, and that all these amendments were intended only as an abandonment of that broad idea; but clearly this is not correct. The original claim, for which the present claim 1 was substituted, was not so broad, but covered a track formed by turning the edges of the vertical sides inward and then upward. The sentence in the specification which was stricken out had relation only to the claim as drawn, and could not have had relation to the broad idea of a track with vertical sides bent inwardly, and not also bent upwardly. It is impossible to maintain otherwise than that the reasonable effect of the proceedings in the patent office is that the applicant understandingly abandoned the broad construction now contended for.

We are also strengthened in the conviction that the result of this proposition is not merely to technically narrow the inventor's claim contrary to his intention, and that it is in line with his actual purpose, because the carriers to which his patent refers, and which are covered by claim 2, are stated in that claim to be rounded on their peripheries to fit rounded troughs. Therefore, the narrowing of claim 1 so as to limit it to a rounded trough suitable for rollers rounded on their peripheries is in harmony with the leading thought of the inventor. However this may be, the proceedings in the patent office make it plain that claim 1 cannot be construed to cover a track having a flat surface fairly suitable for, and adapted to, rollers with flat peripheries. If, in the case at bar, the departure of the respondents' device from the form of a rounded trough was clearly only colorable, and still left a trough only partially flattened, and not peculiarly and fairly adapted to a roller with a flattened periphery, we might be compelled to hold that it was a mere evasion, and therefore an infringement; but the departure was without doubt bona fide, and is such as adapts the device in this particular to the form of carriers which the respondents use. Therefore, without determining the question of invention, we are compelled to hold that there is no infringement.

The decree of the court below is affirmed, and the costs of appeal are awarded to the appellees.