SEILER v. FULLER & JOHNSON MFG. CO.

(Circuit Court of Appeals, Seventh Circuit. February 7, 1903.)

No. 907.

1. PATENTS—INVENTION—TRANSPLANTING MACHINES.
The Bemis patent No. 423,723, for a transplanting machine, claim 1, is void for lack of patentable invention in view of the prior art, including the Smith transplanter (patent No. 335,724, and improvements covered by later patents), which was an operative machine, the only change in which made by Bemis was to substitute for the pressing rollers pressing plates previously known and used in seed-planters, which was an obvious mechanical substitution.

2. SAME—INFRINGEMENT.
The Bemis patent No. 423,724, for a transplanting machine, claim 6, is void for lack of invention. Claims 3 and 4 *held* not infringed if valid.

3. SAME.
The Starks and Felland patent, No. 486,200, for a transplanting machine, claims 1 and 2, covering a combination of devices by which the weight of the persons who set the plants is utilized to hold the furrow-opener in the ground, is not infringed by the machine of the Moehring patent, No. 653,425, which employs different means for utilizing the driver's weight for the same purpose. Claims 6 and 7, for means to fasten the tongue rigidly to the frame and to disengage it at the end of the row, in view of the prior agricultural implement art, must be restricted to the means specified, and, as so limited, they are not infringed by the Moehring machine.

Appeal from the Circuit Court of the United States for the Western District of Wisconsin.

By the decree appealed from it was adjudged that appellant was infringing claim 1 of letters patent No. 423,723, March 18, 1890, to Bemis; claims 3, 4, and 6 of No. 423,724, March 18, 1890, to Bemis; and claims 1, 2, 6, and 7 of No. 486,200, November 15, 1892, to Starks and Felland, assignors to appellee.

The claims are as follows:

First Bemis patent: "(1) In a transplanting-machine, the combination, with the runner or plow provided with the usual mold-board, of the gathering and spreading plate formed or provided upon its end, on one side thereof, with a downwardly-extending flange, substantially as set forth."

Second Bemis patent: "(3) In a transplanting-machine, the combination, with plow or runner supports, of adjustable angular brackets secured thereto, laterally-extending shoes secured to said adjustable brackets or to their equivalent, and a plow or runner secured between said supports, substantially as set forth. (4) In a transplanting-machine, the combination, with plow or runner supports, of angular brackets secured thereto, said brackets provided on their vertical members with elongated slots, transverse pins passing through said elongated slots and through perforations in the supports, whereby adjustability may be given, laterally-extending shoes secured to the horizontal members or arms of said brackets, and a plow or runner secured between the supports, substantially as set forth." "(6) In a transplanting-machine, the combination, with plow or runner supports, of a plow or runner secured between said supports, and laterally-extending shoes secured to said supports, the outer edges of said shoes being turned downwardly, so as to gather the earth into the furrow after the plant has been set, substantially as set forth."

Starks and Felland patent: "(1) In a machine of the class described, the combination, with the main frame, of the beam, I, pivoted to the main frame, the furrow-opener carried by the beam, and a beam or beams, G, pivoted to the frame and supported upon the furrow-opener beam, all substantially as shown and described. (2) In a machine of the class described, the combination, with the main frame, of the furrow-opener beam, I, the beam or lever, G, pivoted to the main frame and supported upon the furrow-opener beam I, and an adjustable connection between the said beam I and the beam G, whereby the leverage of the latter beam may be varied as desired." "(6) In a machine of the class described, the combination, with a main frame, of a block or frame, Z, pivoted thereto at its forward end, and a lever, b, pivoted to the main frame and adapted to engage slots formed in the main frame and in the frame, Z, all substantially as shown and described. (7) In combination with a main frame having a block B at its forward end, said block having a slot or recess, a, in its rear face, a supplemental frame or block, Z, provided with a wheel, e, and connected with the block, B, of the main frame by means of a bolt, Y, and a lever, b, pivoted to the block, B, and adapted to enter the slot, a, and a corresponding slot in the frame or block, Z."

Charles M. Peck and Lysander Hill, for appellant.

Wm. R. Bagley (Robert M. Bashford, on the brief), for appellee.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

BAKER, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

The patents relate to transplanters. Before Bemis's time (Tucker, No. 93,250, August 3, 1869; Tennent, No. 193,734, July 31, 1877; Smith, No. 335,724, February 9, 1886, reissued No. 10,982, January 29, 1889; Smith, No. 345,184, July 6, 1886), transplanters were known, and the Smith machine was being manufactured and used with some degree of success. The Smith transplanter may be described generally as a wheeled implement having a furrow-opener, with one side—the land side—in line with the draft of the machine, so as to cut perpendicularly into the soil, and the other side extended at an angle so as to throw the earth out of the furrow; at the land side of the furrow-opener, a roller that compresses the

soil and makes firm the perpendicular wall against which the plants are set; at the heel of the furrow-opener, a spout through which at regular intervals water is let into the furrow; following the opener, on the mold side thereof, a plate that gathers the soil into the furrow; to the rear of this, a roller that presses the soil into the furrow and about the plants without touching them; and, suspended from the rear of the frame, seats from which operators may set the plants by hand in the furrow in advance of the scraper and roller. For the Smith roller at the land side of the furrow-opener, Bemis substituted a plate to compress the soil and make firm the perpendicular wall. This feature is included in claim 5 of the first Bemis patent, but is not involved in this suit. For the scraper and roller at the rear and on the mold side of the opener, Bemis substituted a plate having its rear outward portion bent downward obliquely to the furrow. The bent portion gathers the soil into the furrow, and the remainder of the plate presses it about the plants without touching them. This plate is an element in the first claim. In the specification Bemis stated:

"The particular objects of my invention are to provide a machine having improved facilities for smoothing and pressing the soil on one side of the furrows; furthermore, in means for covering the furrow in a simple and effective manner. * * * The advantages claimed by me are the construction of the compressing plate or spring secured to the land side of the runner, which leaves a smooth perpendicular wall against which the plants are placed; also the construction and arrangement of the gathering and spreading plate, which has decided advantages over the rollers ordinarily used for the same purpose, inasmuch as in certain conditions of the soil—as, for instance, when damp or wet—the dirt will adhere to the wheel, thus to a certain extent impairing its effectiveness. This defect, however, is not apparent in the device substituted by me, which in this respect is a considerable improvement in the runner system of planting."

It seems clear that Bemis improved the Smith machine in the respects described; but how far the machine of the first Bemis patent would be superior to the Smith transplanter in actual operation is left to the imagination, since the record discloses that the machine, made and sold extensively by appellee, and used by farmers with success, has a V-shaped furrow-opener, with a gathering and pressing plate following at each side.

Bemis was not the first to conceive and build a wheeled implement, "whereby persons suitably seated upon the vehicle are enabled to place the plants in a furrow or opening made for the purpose, the machine subsequently filling in the opening or furrow and compactly pressing the earth about the roots of the plant." Every item of work that could be done by the machine of the first Bemis patent could likewise be done, though perhaps not so well, by the Smith machine. The functions of each machine, as a whole, and of the parts individually, were identical, precisely. And in the general art of planting, the combination of a furrow-opener with a gathering and pressing plate to fill in the furrow (as an operative equivalent for a combination of a furrow-opener with a gathering plate and pressing roller) was well known. Bagley, No. 211,370, January 14, 1879; Vivion, No. 194,745, August 28, 1877; Bowman and Selby, No. 115,-

688, June 6, 1871. These patents relate to improvements in seed-planters. And where a V-shaped opener and two gathering and pressing plates were used in the seed-planters, it is true that the machines, without alterations, could not be used in setting out plants. The seed spout would have to be removed so as to permit the operator's hand to set the plants at the heel of the furrow-opener, and the gathering and pressing plates would have to be spaced far enough apart to avoid injuring the plants. But even if the necessity and the manner of making these changes were not unavoidably obvious, as we think they were, they had been shown by Bemis's predecessors in transplanter building.

The amount of play in the plates in going over the soil would depend upon the dimensions and flexibility of the plates and supporting arms—matters not specified nor claimed in the patent, and obtainable in actual construction as well in one plate as another.

Claim 1, the combination of the furrow-opener with "the gathering and spreading plate formed or provided upon its end, on one side thereof, with a downwardly-extending flange," describes and covers the furrow-openers and gathering and pressing plates already known. The only difference is that Bemis claimed his combination "in a transplanting machine," while the existing combinations appeared in seed-planters. Granting that Bemis made a new and useful improvement in transplanters, the substitution of a known part of a seed-planter for the corresponding part of a transplanter, with the required and self-suggesting changes, did not, in our judgment, involve the exercise of the inventive faculty. We realize that the line between invention and mechanical skill is hard to draw, and that, in cases of doubt, the fact of successful operation and large demand should resolve the doubt in favor of the patentee; yet, when the court is satisfied that the improvement resulted only from mechanical skill or less, the duty remains to say so. If the fact that an improvement was found to be novel and useful should inevitably establish that the improvement came from an inventor, the skilled mechanic would be eliminated from the dramatis personæ, and his part utterly deleted from the play of progress.

The second Bemis patent, issued on the same day as the first, was applied for some five months later. The sixth claim combines the plow supports, the plow, and "laterally-extending shoes secured to said supports, the outer edges of said shoes being turned downwardly so as to gather the earth into the furrow after the plant has been set." The "shoe" of this claim is the "gathering and spreading plate" of the first patent, in which were also shown the plow and plow supports. Tennent's transplanter, and likewise seed-planters above referred to, disclosed a shoe or plate at each side of the furrow-opener. The duplication of the plates in the sixth claim did not, in our opinion, require invention. The third claim embraces the elements of the sixth, and, secured to the plow supports, "adjustable angular brackets" to which the shoes are attached. The fourth claim adds to the third "elongated slots" in the vertical members of the brackets, and "transverse pins passing through said elongated slots

and through perforations in the supports, whereby adjustability may be given." The only office of these brackets, slots, and pins is to afford means for fastening and adjusting the shoes to the supports. As instrumentalities to that end, they had been employed in the Vivion structure. If, in details of construction, Bemis has differentiated from Vivion sufficiently to indicate invention, appellant cannot be held to infringe, because he has adopted the method shown in Farmer's patent, No. 246,106, August 23, 1881.

Claims 1 and 2 of the Starks and Felland patent relate to means for using the weight of persons on the machine to press and hold the furrow-opener in the ground. Claim 1 covers the furrow-opener beam, pivoted to the main frame, and "a beam or beams, G, pivoted to the frame and supported upon the furrow-opener beam." Claim 2 adds "an adjustable connection between the furrow-opener beam and the beam, G, whereby the leverage of the latter beam may be varied as desired." Beam G is a lever for transmitting to the furrow-opener beam the weight of persons on the machine. But it was old to use, by leverage and adjustable leverage, the weight of persons on the machine to press and hold the furrow-opener in the ground. Selby and Bowman, No. 127,648, June 4, 1872; Haworth, No. 263,403, August 29, 1882; Chew, No. 440,738, November 18, 1890. To sustain the validity of claims 1 and 2, it is necessary, therefore (Westinghouse v. Boyden Power Brake Co., 170 U. S. 537, 558, 18 Sup. Ct. 707, 717, 42 L. Ed. 1136), "to refer back to the specification; not, it is true, for a slavish adoption of the identical instrumentalities therein described, but for the understanding of the essential and substantial features of the means therein illustrated." The specification shows that the "beams, G," are the beams that carry the seats for the plant setters at the rear of the transplanter. The instrumentalities specified to effect the desired result comprise a combination of six elements: The pivoted furrow-opener beams; the pivoted seat-carrying beams; the seats thereon; the link connecting to the furrow-opener beams the yoke having notches along its upper edges; the yoke aforesaid; and the yoke attached to the seat-carrying beams to hook into the notches of the first yoke. Appellant uses the device of Moehring's patent, No. 653,425, July 10, 1900. The same general result of impressing a person's weight upon the furrow-opener is accomplished by the union of four elements: The pivoted furrow-opener beam; the pivoted beam to carry the driver's seat at the front of the transplanter; the seat thereon; and the strut interposed between the seat beam and the furrow-opener beam. In the Starks and Felland machine, to utilize the driver's weight instead of the plant setters' would require a material reconstruction involving the substantial abandonment of the means devised by them for effecting the general result. We consider the Moehring device an independent improvement in the old, open field.

The sixth and seventh claims are for means to fasten the tongue rigidly to the frame, which may be disengaged at the end of the row. In the agricultural implement art, numerous devices for this purpose had been employed. West, No. 106,898, August 30, 1870; Un-

derwood, No. 177,668, May 23, 1876; Sickler, No. 300,807, June 24, 1884; Anderson, No. 431,683, July 18, 1890; Stanhope, No. 485,994, November 8, 1892. We think the Starks and Felland claims must be restricted to the means specified—a block rigidly attached to the front end of the frame; a block rigidly attached to the rear end of the tongue, having its rear face flush with the rear face of the first block; in the rear faces of the blocks, vertical slots that are in line with each other when the tongue points straight ahead; and a pivoted key to drop into the two slots when in line, which may be disengaged by pressing against the upper end thereof. Appellant's device, constructed under claims of the Moehring patent above mentioned, consists of a notched metallic sector rigidly attached to the rear end of the tongue, and a plate rigidly attached to the frame, carrying a spring latch arranged to engage, by the action of the spring, with the notch of the sector plate when the tongue is in line. At the end of the row, the movement of the lever that is used to lift the furrow-opener out of the ground also loosens the latch and frees the tongue. We think there is no infringement.

The decree is reversed, with the direction to dismiss the bill for want of equity.