### LONG v. NOYE MFG. CO.

(Circuit Court, W. D. New York. September 29, 1911. On Application for Rehearing, October 13, 1911.)

#### No. 418.

1. PATENTS (§ 112*)—ERRORS IN PATENT OFFICE—POWER TO CORRECT.

The court in an infringement suit is without power to correct errors or mistakes that have been made in the Patent Office, either by the commissioner in erroneously considering patents cited by him as belonging

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

in the prior art, or by the patentee's inadvertence in failing to call attention thereto.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 162–165; Dec. Dig. § 112.*]

2. PATENTS (§ 176*)—INFRINGEMENT—"CORRUGATIONS."
"Corrugations" called for in a patent do not necessarily possess the characteristics of regularity or symmetry.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 176.*
For other definitions, see Words and Phrases, vol. 2, p. 1628.]

3. WORDS AND PHRASES—"FLAT."
The word "flat" signifies something that is level, without rotundity, curvature, or other variation or irregularity.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 3, p. 2847.]

4. PATENTS (§ 239*)—INFRINGEMENT—ADDITIONS.
The addition of something to what is shown by a patent does not avoid infringement if the substance of the invention is taken and the principle or mode of operation retained.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 377, 378; Dec. Dig. § 239.*]

5. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—RADIATOR FOR AUTOMOBILES.
The Long patent, No. 898,237, for a radiator for automobiles, discloses invention and is valid, but of narrow scope. Claims 1 and 2 *held* infringed, and claim 3 not infringed.

In Equity. Suit by Joseph B. Long against the Noye Manufacturing Company. On final hearing. Decree for complainant.

L. M. Hopkins, for complainant.
J. William Ellis, for defendant.

HAZEL, District Judge. The patent in suit, No. 898,237, granted September 8, 1908, to Joseph B. Long and another, on application dated October 23, 1905, relates to a combination in a radiator for use in automobiles of the so-called honeycomb or cellular type. Radiators are used in automobiles to keep the cylinder of the engine cool, so as to prevent the expansion of the piston which is apt to occur because of the surplus heat to which it is subjected by the explosion of gas or vapor. The heat is absorbed by the radiator from the water which flows from the jacket around the cylinder circulating around it and through the radiator which dissipates the heat into the atmosphere, and cools the water as it flows back into the water jacket. Ordinarily radiators are made of metal, preferably sheet copper. The tubes through which the water flows are very thin, and do not contain sufficient mass to absorb the heat from the water with the required rapidity. Therefore to provide such tubes or the mass of metal composing them with increased radiating surfaces corrugated radiating strips are used which result in giving greater conductivity and radiation, with the result that the heat is more readily absorbed from the water and dissipated into the atmosphere. In the patent in suit the metal strips are corrugated transversely of their length, to further

increase the radiating surface, and each strip is positioned so that the higher portion of the corrugations or the summits make contact with the summits of the adjacent strip, thereby enabling the strips to vertically rest upon the underlying or opposite strip. Each strip is provided with a plurality of holes extending from edge to edge through which the tubes pass. The claims in controversy read as follows:

"1. In a radiator, the combination with the headers, of a plurality of tubes connecting them and arranged in a row extending from side to side of the radiator, and a plurality of strips extending from side to side of the radiator, said strips having openings through which said tubes pass, said strips being corrugated transversely of their length from edge to edge and so arranged that the summits of the corrugations of adjacent strips con-tact with each other.

"2. In a radiator, the combination, with the headers of a plurality of tubes connecting them and arranged in a plurality of rows extending from side to side of the radiator, and a plurality of strips extending from side to side of the radiator, each of said strips having openings through which all of said tubes pass, said strips being corrugated transversely of their length from edge to edge and so arranged that the summits of the corrugations of adjacent strips contact with each other.

"3. In a radiator the combination with the headers, of a plurality of tubes connecting them and arranged in a row extending from side to side of the radiator, and a plurality of strips extending from side to side of the radiator, said strips being corrugated transversely of their length and having openings extending through the summits of some of the corrugations, through which openings the tubes pass, while other of the corrugations are located between the tubes, the strips being so arranged that the summits of the corrugations of adjacent strips contact with each other."

Claims 1 and 2 emphasize strips which are corrugated transversely of their length from edge to edge while claim 3 specifies that the strips are "corrugated transversely of their length and have openings extending through the summits of some of the corrugations, through which openings the tubes pass," and the limiting phrase "from edge to edge" is not contained therein.

The invention it is thought principally resides in the element which defines the length of the corrugations "from edge to edge," which phrase is a distinct limitation upon the character of the corrugations of the strips. The patentee was the first to produce a radiator for use in automobiles in which the strips of metal were corrugated trans-versely from edge to edge and so arranged that the summits of the corrugations of adjacent strips contact with each other. It is shown that in the Humphrey patent, No. 780,565, for a water radiator, the plates or strips are corrugated from edge to edge, but such plates are placed apart from each other, and, therefore, are not anticipatory of the patent in suit. The file wrapper in evidence shows that when the Long application for patent was pending the examiners cited the French patent to Grouvelle, No. 356,877, patents to Long, No. 844,685, to Dumas, No. 322,399, to Briscoe, No. 810,030, to anticipate the claims as originally presented with the result that the applicant inserted in claims 1 and 2 the limiting words "from edge to edge." Although it now appears that the prior patents to Long, to Briscoe, and to Grou-velle, the principal citations upon which the examiner rejected the orig-inal claims, were apparently not a part of the prior art under the doc--

trine of Bates v. Coe, 98 U. S. 38, 25 L. Ed. 68, their dates of issuance being subsequent to the date of the application in suit, yet I am of opinion that in modifying their claims and narrowing them the patentees concluded themselves from insisting on a construction different from that which the modified claims reasonably denote.

[1] This court is without power to correct errors or mistakes that have been made in the Patent Office either by the Commissioner of Patents in erroneously considering patents cited by him as belonging to the prior art or by the patentees' inadvertence in failing to draw the examiner's attention thereto. Such relief must be sought in the Patent Office by application for reissue. Reece Button Hole Machine Co. v. Globe Button Hole Machine Co., 61 Fed. 967, 10 C. C. A. 194.

The invention, though narrow, nevertheless belongs to the class of improvements which have advanced the prior art and produced a new and useful result and accordingly it is entitled to a reasonable degree of protection. Giving claims 1 and 2 such a construction the defendant's radiators are thought clear infringements thereof. The metal strips used by defendant in its construction are corrugated at their margins and are arranged at their marginal corrugations to contact the summits of adjacent strips, while complainant's corrugations contact the summits of opposite strips from edge to edge. Intermediate of defendant's marginal corrugations the surfaces of the strips are uneven, irregular, and distorted, and the question arises whether such intermediate portions are corrugated transversely of their length so as to come within the terms of the claims. The word "corrugation" is thus defined in the Century Dictionary: "To wrinkle; draw or contract into folds; pucker; to corrugate iron plates for use in building; wrinkled; bent or drawn into parallel furrows or ridges as corrugated iron."

[2] The definitions apparently do not imply that corrugations shall possess the characteristics of regularity or symmetry, and in my estimation the defendant's unevenness in the planes intermediate to its heavier marginal corrugations extending from side to side are fairly within the terms of the claims. Certainly, the middle portion of the strip is not flat, as contended by the defendant, though having a flattened or crushed appearance.

[3] The word "flat," according to the accepted definition, signifies something that is level; something that is without rotundity, curvature, or other variation or inequality. The interruptions of the marginal corrugations by a distortion of the metal surface in the center and between the edges was, in my opinion, a palpable evasion of claims 1 and 2. Such modification performs the identical functions of the patent, a function which the defendant could not have attained by an intermediate flat or level surface. Without wrinkling or puckering such surfaces intermediate the corrugations at the edges the strips would have been inoperative.

[4] Even though the defendant by its adaptation secures an increased area for radiation, the complainant's invention is nevertheless appropriated by defendant's method of corrugating the strips transversely from edge to edge. In Cimiotti Unhairing Co. v. American

Unhairing Machine Co., 115 Fed. 504, 53 C. C. A. 230, the Court of Appeals for the Second Circuit said:

"The mere fact that there is an addition, or the mere fact that there is an omission, does not enable you to take the substance of the plaintiff's patent. The question is not whether the addition is material, or whether the omission is material, but whether what has been taken is the substance of the invention."

See, also, Mitchell v. Ewart Mfg. Co., 81 Fed. 395, 26 C. C. A. 443, and Penfield v. Chambers Bros. Co., 92 Fed. 653, 34 C. C. A. 579.

[5] The defendant contends that its radiator is constructed under the patent to John A. Wilson, Jr., No. 855,373, but said patent clearly shows a mere crimping at the edges of the sheet; a crimping which does not extend transversely from edge to edge. Concededly, the defendant is at liberty to use such invention without incurring liability, but instead of doing so it prefers to appropriate the substance of the Long invention and seeks to evade the claims by substituting colorable variations. The rule of the law as stated in Norton v. Jensen, 49 Fed. 866, 1 C. C. A. 452, applies to the facts here and may with propriety be quoted. The court said:

"No one can avoid infringement simply by means of ingenious diversities of form and proportion, presenting simply the appearance of something unlike the patented machine. It is well settled that a copy of the principle or mode of operation described in the prior patent is an infringement of it. If the patentee's ideas are found in the construction and arrangement of the subsequent device, no matter what may be its form, shape, or appearance, the parties making or using it are deemed appropriators of the patented invention, and are infringers. An infringement takes place whenever a party avails himself of the invention of the patentee without such a variation as constitutes a new discovery."

Claim 3 is descriptive of a somewhat different structure, in that it specifies a new element of the combination, namely, an additional corrugation located between the tubes. The language of the claim is broader than the preceding claims, but considering the amendments filed in the Patent Office to the original claim I am persuaded that such claim should be given only a strict construction. Moreover, said claim being a new combination of elements is not infringed by the defendant which in its structure has omitted a material part of the combination. Of course the defendant cannot escape infringement for a combination if he uses the material parts leaving out nonessential parts, but as claim 3 is for another form of the strips, and one which is different, and performs the additional function of increasing the radiating surface, I am disinclined to hold that the defendant's structure, which does not include the additional corrugation, responds to the terms of said claim.

The patent is valid and claims 1 and 2 are infringed by the defendant. Complainant may have the usual decree for accounting and injunction, with costs.

### On Application for Rehearing.

In the petition for rehearing the defendant claims that the agreement in evidence between the parties, but which was not mentioned in the opinion, operated as a waiver of the infringement alleged in the

bill. This claim is untenable. The correspondence printed in the record regarding another infringing radiator and the failure of the defendant to make good its offer to disclose to complainant its "radiator taken from stock," would seem to indicate that estoppel was not an important element of defense.

It is also claimed that the court erred in its definition of the word "corrugation." Upon again consulting the dictionaries and the Encyclopedia Americanna, vol. 5, it is ascertained that by the term "corrugated iron" is implied "a sheet of iron formed with parallel ridges and furrows so that the cross-section is a continuous waved line." The corrugated strips of the patent in suit correspond precisely to this definition, but as hereinbefore shown the defendant's strips do not, they being corrugated transversely from the edges toward the middle zone, the zone being puckered or flattened down. By this arrangement the summits of the strips contact at the edges and to the puckered portion, the tubes or pipes passing through the regular corrugations which gives firmness to the structure. It is quite probable that the radiating surface is somewhat reduced in defendant's strips, yet the evidence shows that by puckering the middle zone the metallic mass is apportioned in such a way as to impart a sufficient surface for the desired radiation and conductive capacity. That the middle portion of the strips gives the defendant a somewhat less radiating surface is immaterial in view of the fact that such construction attains the substantial function of the Long patent in suit and operates in substantially the same way. In this aspect of the case I am disinclined to narrow the claims to their literal phrasing of "corrugations extending transversely from edge to edge." But defendant contends that such claims were limited in the Patent Office. On referring to the file wrapper it appears that the patents cited by the Commissioner of Patents to limit the claims do not show corrugated strips or plates from edge to edge which contact with the summits of adjacent strips and the amendments required were not on that ground—that is, no amendment was required as condition to the allowance of the claims which limited the particular extent of the corrugations—and therefore I do not think that the claims in suit should be limited to the precise form of strip and thus defeat the essence of the Long invention. Reece Button-Hole Ma. Co. v. Globe Button-Hole Ma. Co., 61 Fed. 967, 10 C. C. A. 194; Seiler v. Fuller & Johnson Mfg. Co., 121 Fed. 85, 57 C. C. A. 339.

The application for rehearing is denied.