STILLWELL v. McPHERSON, Highway Com'r.

(Circuit Court of Appeals, Second Circuit. November 10, 1914.)

No. 30.

PATENTS (§ 328*)—VALIDITY—INFRINGEMENT—CORRUGATED METAL CULVERT.
   The Watson patent, No. 559,642, for a corrugated metal culvert, discloses patentable invention and is valid; also *held* infringed.

Appeal from the District Court of the United States for the Northern District of New York.

On appeal from a decree of the District Court for the Northern District of New York dismissing the bill which was filed for the infringement of letters patent granted to James H. Watson of Crawfordsville, Ind., for a corrugated metal culvert. The patent is dated May 5, 1896, and expired May 5, 1913. A demurrer to the bill was sustained by the Circuit Court (172 Fed. 151), but this decision was reversed by this court (183 Fed. 586, 106 C. C. A. 354). The decision on final hearing is reported in 207 Fed. 837.

Wallace R. Lane and Clarence J. Loftus, both of Chicago, Ill., for appellant.

Risley & Love, of Utica, N. Y., and Bond & Miller, of Canton, Ohio, for appellee.

Before LACOMBE, COXE and ROGERS, Circuit Judges.

COXE, Circuit Judge. The Watson patent has been so thoroughly discussed in the opinions of the District Court and of this court that it will serve no useful purpose to repeat in detail what is there said regarding the patent and the disclosures of the prior art. The patent is for a corrugated metal culvert. It is unusually plain and simple in its description and drawings and, for the purposes of this decision, is sufficiently described in the single claim, which is as follows:

"A culvert constructed of sheet metal and comprising connected cylindrical sections provided with circumferential corrugations extending to the extremities of the sections, each section terminating at one end in a flared and at the other end in a contracted portion of a corrugation, whereby the contracted extremity of one section is adapted to fit into the flared extremity of the adjoining section to interlock the terminal corrugations, and means, as bolts, engaging the overlapping extremities of the corrugations for securing the sections together, substantially as specified."

It is apparent from the record that the question of patentability is evenly balanced upon the proof. The District Judge was of the opinion that the patent was invalid for lack of invention but the record shows that other judges entertained a different view. In brief, the claim is for a sheet metal culvert composed of connected cylindrical sections having circumferential corrugations extending to the extremities of the sections. Each section terminates, at one end in a flared and at the other end in a contracted portion of a corrugation, so that two sections may interlock, the ends being held in place by bolts or similar means. The corrugations greatly strengthen the culvert and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the doubling of the corrugations at the joints, braces and adds stability to the structure. In short, the patented culvert is cheap, strong, durable, easily transported, quickly laid down and easily repaired. We cannot believe that the man who gave such a structure to the world should be denied the title of an inventor.

If, in 1895, a farmer, finding that water had settled on the high side of the road through his farm, had dug a trench across the road and inserted therein two or three lengths of stove pipe to drain off the water and had then filled in the trench and covered the pipe with earth; no one, we apprehend, would think of classing this farmer as an inventor. It required no exercise of the inventive faculties to do this, even though for a time the pipe successfully disposed of the water.

But suppose, further, that after a few weeks of trial, the pipe had collapsed, being unable to stand the strain of heavy loads driven over the road; would the ordinary farmer attempt to remedy the difficulty or would he give up the problem as incapable of successful solution and build an old stone or cement culvert in its place?

We think the farmer or a mere mechanic would give up in despair, but the inventor would appreciate the difficulties and overcome them as they arise. In short, the successful solving of such a problem marks the difference between the inventor and the mechanic. The mechanic would reason that by replacing the pipe by a thicker and stronger one the ultimate collapse would only be delayed. He might attempt to strengthen the culvert by internal bracing, but it would soon appear that this would cause grass, leaves and other material to lodge on these obstructions and choke the passage. Again, he might try heavy earthenware or steel pipes, but here, again, he would find that the cost of production, transportation and installing would probably form an unsuperable barrier and he would abandon the idea of attempting to improve on the culvert which had collapsed. The inventor, on the other hand, would look at the problem with a far wider range of vision. He would perceive the importance of retaining the metal pipes and would strengthen them by adding the corrugations and the double thickness of metal at the joints. These changes would impart the needed strength without increasing the cost or adding materially to the expense of manufacture or transportation. The inventor would see the advantage of a metal culvert and would work upon the problem until he had solved it. The fact that Watson, during the early years of his patent, was almost invariably repulsed by those interested in the art because they thought his device empirical, inefficient and perishable, is persuasive to the conclusion that his improvement was not obvious. In view of the phenomenal success of the patented pipe after the public became aware of its advantages, and the strength and durability which it has developed after years of trial, we are of the opinion that any doubt as to patentability should be resolved in favor of the patent. The practical and commercial success of the Watson culvert is so clearly shown that we find it difficult to believe that a mere mechanic could have produced a culvert

which has so revolutionized the art—a culvert which has shown a durability which no one at the time of the invention thought possible.

We have here not only the circumstance that the new device has commended itself to the public and gone into extensive use. This sometimes happens because of judicious advertising and clever business methods. The early history of the patentee's experience is illuminative. For years after the issue of the patent he labored unsuccessfully to introduce his culvert. The persons whom he urged to try his device, persons engaged in road building and under-draining, declined to do so because it seemed to them very doubtful whether it would endure, and opposition was overcome only after he had actually built a few culverts and demonstrated their capacity to remain efficient after years of use. This circumstance indicates that, simple though it is, the Watson culvert is a device which would not have suggested itself to the ordinary road builder.

Infringement is clearly shown, the two structures are almost identical and the only differences are of form and not of substance. The defendant passes the rivets through the metal at a point farther from the ends of the section by less than an inch than in the complainant's structure. The difference is trivial and nothing functional is produced thereby.

The decree is reversed with costs and the cause is remanded to the District Court with instructions to enter a decree for the complainant in the usual form.