### McCORD & CO. v. WOODS et al.

(Circuit Court of Appeals, Seventh Circuit. October 26, 1917. Rehearing Denied December 18, 1917.)

No. 2356.

1. PATENTS ⬤=328—VALIDITY AND INFRINGEMENT—JOURNAL BOX.
    The Woods patent. No. 904,665, for a composite journal box, was not anticipated in the prior art, and discloses invention in the feature of corrugations extending continuously across the bottom and up the sides. Claim 2 *held* infringed, and claim 3 not infringed.

2. PATENTS ⬤=328—VALIDITY AND INFRINGEMENT—JOURNAL BOX.
    The Woods patent, No. 969,933, for a journal box, *held* not anticipated and infringed.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit in equity by Leonard G. Woods and Union Spring & Manufacturing Company against McCord & Co. Decree for complainants, and defendants appeal. Modified and affirmed.

Edward Rector, of Chicago, Ill. (James F. Williamson, of Minneapolis, Minn., on the brief), for appellants.

Frederick W. Winter, of Pittsburgh, Pa. (Thomas F. Sheridan, of Chicago, Ill., on the brief), for appellees.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

EVANS, Circuit Judge. From a decree sustaining two patents, issued to Leonard G. Woods, the first being No. 904,665, granted November 24, 1908, and the second being No. 969,933, granted September 13, 1910, adjudging both patents infringed by appellant, and enjoining further infringement, this appeal is taken. Defenses are invalidity and noninfringement.

[1] Both patents pertain to a journal box. Claims 2 and 3 of the first patent, found to be infringed, read as follows:

Claim 2: "A journal box composed of a pressed plated body portion comprising sides and bottom *provided with corrugations extending continuously*

*across the bottom and up the sides,* and rigid top portion of metal of a different character, secured to the body portion."

Claim 3: "A journal box composed of a pressed plate body portion comprising sides and bottom open at the inner end and provided with corrugations extending continuously across the bottom and up the side portions, a rigid top portion of metal of a different character secured to the body portion, *and a dust guard pocket spaced from the inner end of said body portion and secured thereto.*"

Claims 1 and 2 of the second patent, in issue in this suit, and found to have been infringed, read as follows:

Claim 1: "A journal box composed of a pressed plate body portion comprising sides and a bottom, and a rigid top portion of metal of a different character provided on its side edges with continuous deep vertical flanges to which the body portion is secured, and having outwardly projecting journal box lugs, *and braces extending from the side flanges to said lugs, said braces being provided with vertical slots or kerfs* for receiving the top edges of the sides of the body."

Claim 2: "A journal box composed of a pressed plate body portion comprising sides and a bottom, and a rigid top portion of a metal of different character, provided on its side edges with continuous deep vertical flanges to which the body portion is secured, and having outwardly projecting journal box lugs, *and braces extending from the side flanges to said lugs, said braces being provided with vertical slots or kerfs* for receiving the top edges of the sides of the body, *said body being provided with vertical corrugations or ribs extending upwardly above the lower edges of said flanges.*"

As a defense to the first patent, appellant cites the prior art evidenced by patents to Charles T. Schoen, No. 482,200, dated September 6, 1892, and to E. W. Hughes, No. 436,355, dated September 16, 1890, and to W. H. Shinn, No. 860,254, dated July 16, 1907, and to others, covering car journal boxes. Journal boxes were first made of cast iron; later malleable iron was used. Nearly all journal boxes first used were cast in a single, integral piece, with the walls of sufficient thickness to withstand the strain to which the box was subjected.

The boxes under consideration are composite, the top being separate from the body or cellar, and made of cast steel, that material being well suited to resist the heavy loads and the wear due to the friction of the bearing parts. The body, generally known as the cellar, and made of wrought iron, are of high tensile strength. A composite box has its advantages when the double purpose of holding bearings and withstanding strains is considered. A decrease in weight is also obtainable without corresponding loss of strength.

Schoen produced a composite box as early as 1892, which he covered by patent. He says in his description:

"I do not limit my invention to these details, inasmuch as my invention consists broadly in a journal box having its body of pressed steel or like wrought metal and a *separate top.*"

Two of his claims read as follows:

Claim 1: "A journal box comprising an independently constructed top of suitable material and formation, combined with a body of wrought metal, such as pressed steel, made separate from the top and composed of sides, bottom, and rear wall, and a front lip made integral and fitted and secured to such a top, substantially as described." '

Claim 3: "In a journal box, a wrought metal body provided with lateral shoulders *O* and a bottom groove *P*, combined with a partition-plate *Q* fitted

therein, to separate off or form in the rear of the box a compartment for the reception of the dust-guard, substantially as described."

It is claimed the Schoen product was not a commercial success. Eight or ten boxes only were made. They were not provided with continuous corrugations, and it does not satisfactorily appear that the boxes built entirely responded to the description of the patent.

The claim of the Hughes patent did not cover the continuous corrugation specified in the Woods patent above set forth, but appellant claims that this element was disclosed in the drawings and description. In describing his product Hughes says: "The exterior flanges strengthen the box." Figure 3 is taken from the drawings in the Hughes patent, and letters, C, D, disclose the "exterior flanges" upon which appellant relies, as an anticipation of Wood's continuous corrugations.

Appellees well describe the distinguishing element in their patent, as follows:

**FIG. 3.**

"In this combination the use of the continuous corrugation down the sides and across the bottom is the new and essential feature in composite journal box construction. It is absolutely new in such a box. Defendant has scoured the art, and while it showed a paper patent with a cast top and the wrought metal body or collar, it could not find the continuous corrugations in the body portion. * * * The paper art showed side corrugations and cross corrugations in the body, but *not in line and not connected*, and leaving *the corners entirely unbraced*. It is by making the corrugations continuous extending around the corners that the boxes were given their main capacity to withstand this tremendous strain."

An examination of the file wrapper in the Patent Office emphasizes this distinction. The original claims 5, 6, and 7 dealt with the corrugations; claim 7 being as follows:

Claim 7: "A journal box composed of a pressed plate body portion comprising sides and bottom, said sides being provided with a vertical corrugation or corrugations, and a rigid top portion of metal of a different character secured to the body portion."

All claims were rejected by the Patent Office and new ones substituted, No. 6 being as follows:

Claim 6. "A journal box composed of a pressed plate body portion comprising sides and bottom open at the inner end and provided *with corrugations extending continuously across the bottom and up the side portions*, a rigid top portion of metal of a different character secured to the body portion, and dust-guard picket spaced from the inner end of said body portion and secured thereto."

This claim was at first rejected, the Patent Office using the following language:

"Claims 6 and 7 are rejected on Schoen above, there being no invention in corrugating the box wherever desired, this being an old expedient in the art."

Patentee then presented his argument in favor of continuous corrugations, using the following language:

"With reference to claims 5 and 6, *while it undoubtedly is not patentable to provide corrugations for strengthening,* we submit that this is only a general rule and does not preclude claims which specify particular manners or agreements of corrugations. Both claims 5 and 6 specify that the corrugations extend *continuously* across the bottom and up the sides, thereby not only stiffening and strengthening the bottom and sides but give strength *at the corner* where it is needed with this character of device and on account of strains to which the same is subject. These claims do not cover broadly the corrugations on either the bottom or the sides but only a *specific kind* of corrugation, one going *continuously around the corners and up the sides.*"

The claim, slightly modified, was thereafter allowed as claim No. 2 above quoted. The validity of this claim No. 2 is thus made to depend solely upon the *continuous* corrugations.

Appellees rely upon the decision in the case of Stillwell v. McPherson, 218 Fed. 839, 134 C. C. A. 611. They also cite the action of the Patent Office in recognizing particular corrugations as the essential and novel element in claims found in some 75 patent grants; they further urge that practically all of the journal boxes in use in the United States were of the integral cast type, prior to the appearance of the Kensington (appellees') box; that notwithstanding the insufficiency of the integral cast type was recognized, and efforts made to produce a successful composite box, none appeared until the appellees placed their product on the market; that appellants, although in control of the industry, were forced to produce a composite box similar to appellees' product; that neary 1,000,000 Kensington boxes were sold in the first seven years.

In reply appellant points to the fact that the Schoen patent expired in 1909 and that if an increase in the production of the composite box occurred shortly thereafter it was due to the expiration of the Schoen monopoly. Answering the argument that invention was disclosed by the fact that some 865,000 Kensington boxes were sold in the first seven years after the issue of the Woods patent, appellant showed that over 550,000 of these boxes were used by one railroad company; that the president of this railroad and the president of the appellant, the Union Spring & Manufacturing Company, were father and son; that a change in the presidency of the latter company was immediately followed by a termination of orders from the railroad company; that the total number of boxes sold after the termination of this contract was insignificant. Appellant also denies being forced to adopt appellees' type of journal box, but claims that its composite box is radically different from appellee's structure, being an integral composite style adapted for use on all types of railroad car trucks, which is not the case with the Kensington box.

The case of Stillwell v. McPherson, supra, furnishes some support for appellees' contention, but may be somewhat distinguished in point of fact because of the difference in the prior arts, and because of the difference in the action of the patentees before the Patent

Office, and because the particular location of the corrugation in reference to the culvert was an emphasized element in the Watson (culvert) patent.

The prior art in the instant case is not conclusive. The Hughes patent disclosed continuous exterior flanges as shown in the drawings represented by Figure 3 produced above. Symington patent, No. 794,259, and No. 855,361, discloses journal boxes with the strengthening means called ribs. The Cochran patent, No. 845,728, described the strengthening element therein referred to, as a flange. In fact, the specifications of the master car builders' journal box provided for corrugation to strengthen.

In the nonanalogous art, the patent to Schoen for a "stake pocket" for cars, No. 381,174, dated April 17, 1888, disclosed corrugations that were continuous and appeared in parallel pairs.

It is obvious that strength was one of the prime essentials of a successfully constructed journal box. Not only was great tensile strength necessary in such a box, but the strengthening means used by appellee made possible a lighter box and lessened the cost of construction.

The difficulty in reaching a correct conclusion in this case has arisen over the question: In view of the prior art, was Woods' contribution merely an exercise of mechanical skill, or did it display inventive genius? This is a border line case. Measured by the usual tests, however, we conclude that Woods' improvement constituted an invention.

That something more than mere mechanical skill was required in the use of continuous corrugations in a composite journal box is suggested by the study and experience of Schoen, upon whose patents appellant relies. Schoen produced a composite journal box in 1892, for which he obtained a patent. He also invented the car "stake holder" with continuous parallel corrugations for strengthening purposes, for which he obtained a patent in 1888. Schoen was a man of acknowledged ability, both as a mechanic and as a manufacturer of car appliances, including journal boxes. He sought a successful composite journal box, and yet it did not occur to him to make use of the continuous corrugations to secure the necessary strength.

Likewise the experience of the appellant is instructive. For many years appellant manufactured a large percentage of all the journal boxes used in this country. For seven or eight years it admittedly endeavored to develop a successful composite journal box. During all of that period the patents now relied upon by it to prove anticipation were subject to the study of its mechanics and engineers. In face of the fact that it never occurred to the appellant to use the continuous corrugation in the composite box, we are not justified in concluding that the use of such means by Woods was an exercise of mechanical skill. This conclusion is strengthened by reason of the further fact that appellant, after Woods pointed the way, made use of the same means to strengthen its box.

Claim No. 3.—The italicized words appearing in this claim, quoted above, supply the additional element which distinguishes this from the last-considered claim. All journal boxes are provided with dust

pockets. Their purpose is obvious, being indicated by the name. They are invariably specified in the master car builders' journal boxes. A commonly accepted type is made by using a piece of board fitted with the pocket to prevent the entrance of dust into the rear end of the box. Fitted closely and supplemented by applications of oil, these boards are efficient in keeping out the dust.

Woods' pocket differed from other types, in that he provided a separate piece outside or beyond the rear wall of the box and riveted thereto. He added strength to the box by the stiffening effect of the dust guard. It was the dual purpose of a dust guard, which served not only to keep out the dust, but also to strengthen the box at the particular place where strength was required which constituted appellee's claim to invention. The expert testimony supports the claim that the reinforcement of the journal box by the dust guard at the place of attachment, provided for in Woods' patent, was of practical value and served to make a stronger and a better box.

We are of the opinion that the location of a dust guard at the place and fastened in the manner described in this claim is invention, and as such is entitled to protection.

Noninfringement of Claim No. 3.—Appellant, however, contends that its journal box does not infringe this claim. It must be conceded that its journal box is provided with a dust guard, which differs from the one described in the Woods patent, in that the former is an integral part of the journal box, and is spaced forward and inward, instead of outwardly from the inner end of said box.

Again, the file wrapper is important so far as it differentiates the Schoen patent from the Woods patent, and as thus differentiated it appears that no infringement is shown. Woods' claim, as first filed, described the dust guard element as follows:

"*And a pressed metal dust guard pocket*, said part being secured together."

This claim was rejected, and the following claim of a dust guard pocket was inserted:

"And a pressed metal dust guard pocket, *spaced from the inner end of the body and secured thereto*."

Upon the Department's citing the Schoen patent, Woods distinguished his dust guard as follows:

"Schoen's box is shown as provided with *an inner end portion* M *integral with the body*, thus having the body in the form of a box closed at all sides except top and portion of the outer end. * * * In the patent to Schoen, the dust guard pocket is formed *by the rear wall of the box*, which extends from the bottom to the top and is integral with the bottom and side walls, *and a separate plate located inside of the end wall and spaced therefrom*. In applicant's box the inner end of the box is merely turned up slightly to form a shallow bottom flange, and the dust guard pocket is formed by a plate flanged on its bottom and the two sides fitting over the end of the box and secured thereto; *said plate being spaced from the end of the box*."

Having secured this claim by distinguishing the Schoen box in the respects quoted above, patentee cannot now assert infringement by a structure substantially identical with the product thus distinguished.

If appellants' dust guard is the mechanical equivalent of the Woods dust guard, then it follows that claim No. 3 was anticipated by Schoen. We conclude, however, that the Patent Office properly differentiated the Woods patent from the Schoen product, and for the same reason the appellants' box must be distinguished from the Woods patent.

Claim No. 3 is valid, but not infringed.

[2] Patent No. 969,933.—The two claims of this patent have been quoted, and the italicized words emphasize the asserted novelty in each claim. The patent covered an improvement in the composite journal box of the type disclosed in the Woods first patent. Patentee's aim was to obtain greater strength, more resistance, at the points and places found weak in the boxes made pursuant to the prior patent, and this was accomplished by providing the rigid top portion and its side edges with—

"continuous deep vertical flanges to which the body portion is secured and braces extending from the side flange to said lugs, said braces being provided with vertical slots or kerfs for receiving the top edges for the sides of the body. * * *"

An examination of the file wrapper shows that it was a flange *with connected lugs and braces, the braces being provided kerfs,* that supplied the novel element in the new box. Claim 1 as originally filed describes the body as—

"provided on its side edges with continuous deep, vertical flanges to which the body is secured."

This claim was rejected in view of the patent to Schoen. Upon patentee's pressing his claim the examiner said:

"Claim 1 is again rejected on Schoen of record, it is not seen that the claim disclosed anything beyond what any mechanic has a right to do; i. e., make the attaching flange at the top of the box in one piece instead of several smaller lugs and make it somewhat longer (or deeper). This does not constitute patentable novelty."

Upon further amendments, the claims assumed the form above quoted, and were allowed. The description of the flange and lugs is instructive:

"* * * Along its side edges on its lower face it is provided with the continuous depending flanges 19 fitting inside the pressed body portion and serving as a means to secure the top and body portion together, such as by means of rivets driven through the flanges and the sides 2 of the body. These flanges are continuous for the length of the box and are of considerable depth, thus giving material strength, bracing the box and tending to keep it square. Midway of their lengths these flanges are extended to a considerable depth, always in contact with the sides of the body so as to brace the latter, and also forming shoulders 22 for holding the journal bearing. Near its forward end the top is provided with lugs 23 which act as stops for the journal box wedge."

"On its side edges the box is provided with the lugs 24, which are provided with holes 25 for receiving the journal box bolts. These lugs 24 are stiffened by means of braces 26 connecting the same with the flanges 19. These braces also strengthen the inside shoulders 22. The sides 2 of the body are notched or cut away, as indicated at 27, to fit around these braces. The braces 26 are recessed from below, so as to provide vertical kerfs or slots

28 into which the top edges of the body fit. The braces are preferably round-ed off at their lower ends, as shown at 29, in order to assist the edges of the body to enter the slots when assembling. The plate sides of the body have a tight fit in said slots. The slots serve to prevent the sheets from bending or yielding when there is a tendency to force the box out of square. They also permit the braces 26 to be made deeper than would otherwise be the case. The deep braces and flanges support the sides of the body quite low down, and hence increase the strength and rigidity of these sides. The slots prevent movement of the box sides in either direction."

Appellant urges that the structure so described is anticipated by the Schoen patent, and the claims are void for the lack of patentable invention. While it might be admittted that the Schoen box has bolt lugs somewhat similar to those appearing on the Kensington box and these lugs necessarily support and strengthen the side walls of the box, and the extension of lugs into a continuous body flange may be but an exercise of mechanical skill, as suggested by the Patent Office, yet it is apparent that the Schoen box has no brace of the form and shape and location described in the Woods structure. It is this im-provement upon which the Woods box asserts its claim to patent-ability.

The utilization of bolt lugs as a basis for the construction of braces attached to the continuous flange, which is in turn securely fastened to and braces the walls of the body, supports (in theory at least) the contention that greater strength is thereby obtained in a box that is peculiarly subject to strains and pressure. Appellee also urges that the uses of kerfs at the bottom of the brace as here shown extends the support below the flange, and is distinctive of the Woods patent, and is indicative of merit. The expert testimony of the witnesses supports this theory of the patentee.

In view of the advantages to the trade of a successful composite journal box, we are not inclined to lightly reject any advance in the art which gives strength to a box. We therefore hold that the claims are valid.

Noninfringement.—Appellant's box is of a composite type, the top being of a metal different from the body, and is provided with deep, continuous flanges extending down from the top on the inside and outside of the walls of the body. It is an integral composite box; the top being of a different metal from the bottom, but the two parts molded together. It is also provided with bolt lugs. Some of these elements, while common to both appellants' and Woods' box, alone or collectively, are old in the art. Unless the appellant's box is provided with braces extending from the inside flange to the lugs, and these braces in turn are made with vertical slots or kerfs to receive the top edges of the body, there is no infringement.

Appellant admits its box has some of the elements of the combina-tion described in the claims above quoted. It has "a pressed plate body portion comprising sides and a bottom"; also "a rigid top portion of metal of a different character"; it also admits the top on its "side edges" is a "continuous deep circle flange to which the body portion is secured"; also it admits having "outwardly projecting journal box lugs." To constitute infringement, however, another element must

appear, and the dispute over the alleged infringement turns upon the presence or absence of this element. In claim No. 1 of Woods' patent, this element is described as "braces extending from the side flanges to said lugs, said braces being provided with vertical slots or kerfs for receiving the top edges of the sides and body."

That the portion of the continuous outer flange in appellant's box that leaves the walls of the body of the box and encircles the bolt, and is securely attached to the extending bolt lug, corresponds to the brace described in this claim is too apparent to require argument. But to constitute infringement this brace must extend from the inner side flange to the lug, and must also be provided with a kerf.

The testimony on this phase of the case shows clearly that appellant securely connected the brace to the lug on the one side and the inner flange on the other. This was done by drilling or punching holes through the walls of the body of the box at points opposite the center portion of the inner flange and above the bottom of the brace. In the casting operation, the molten metal used for forming the top ran through these holes and effectually connected the inner flange to the brace. Necessarily a slot or kerf from the bottom of these holes to the bottom of the brace resulted. We therefore find the corresponding brace serving a corresponding purpose in appellants' journal box, as is described in the Woods patent.

A separate consideration of claim No. 2 we deem unnecessary. It is valid and infringed.

While it may well be that appellant has made improvements on the Woods journal box, and it may also be true that not all of its boxes infringed the Woods second patent, these facts do not justify the court's refusing an injunction or in directing an accounting.

The decree entered by the court below is modified, in so far as it adjudges the appellant infringed claim No. 3 of patent No. 904,665, and, as so modified, is affirmed. Each party shall pay its or their costs in this court.