## MT. VERNON CAR MFG. CO. v. PRESSED STEEL MFG. CO. et al.

(Circuit Court of Appeals, Seventh Circuit. April 11, 1923. Rehearing Denied June 14, 1923.)

### No. 3089.

1. Patents ⟺328—1,031,571, for railway car end structure, held valid and infringed.

The Murphy & Sisson patent, No. 1,031,571, for railway car end structure of corrugated metal, *held* not anticipated, valid, and infringed.

2. Patents ⟺36—Extensive adoption of structure may determine question of invention.

Evidence showing extensive use and widespread adoption of a patented structure in an art where competition is keen and recognition difficult may be determinative where the question of invention is close.

3. Patents ⟺328—1,058,889, for railway car construction, claim 5, held void for lack of invention.

The Murphy patent, No. 1,058,889, for railway car construction, claim 5, *held* void for lack of invention.

4. Patents ⟺328—1,254,860, for railway car construction, held valid and infringed.

The Sisson patent, No. 1,254,860, for railway box car construction, *held* valid and infringed.

5. Patents ⟺328—1,271,234, for steel railway car end, held void for lack of invention.

The Sisson patent, No. 1,271,234, for a steel wall element for railway car construction, consisting of a plate steel end formed with parallel corrugations, terminating within the edges of the plate, so as to leave

flat margins for attachment, *held* void for lack of invention, in view of the prior art.

6. Patents ☞328—Reissue, No. 14,434, for metal end sheets for railway box cars, held valid and infringed as to claim 43, and not infringed as to claims 9 and 12.

    The Sisson reissue patent, No. 14,434, for metal end sheets for railway box cars, *held* valid and infringed as to claim 43, and not infringed as to claims 9 and 12.

Appeal from the District Court of the United States for the Eastern District of Illinois.

Suit in equity by the Pressed Steel Manufacturing Company and Walter P. Murphy against the Mt. Vernon Car Manufacturing Company. Decree for complainants, and defendant appeals. Modified and affirmed.

Henry Love Clarke, of Baltimore, Md., for appellant.

Geo. L. Wilkinson and Geo. T. Buckingham, both of Chicago, Ill., for appellees.

Before BAKER, EVANS, and PAGE, Circuit Judges.

EVAN A. EVANS, Circuit Judge. Five patents, involving 14 claims, are in issue on this appeal. Their validity was sustained and their infringements found by the District Court. All relate to "railway car end structures," though one patent describes the subject as a "wall element."

[1] Patent No. 1,031,571 to Walter P. Murphy and Clinton E. Sisson, relating to a railway car end construction, was issued July 2, 1912. The claims in question, 11, 12, 14, and 15, read as follows:

"11. The combination, with the body of a railway car, of an all-metal end structure consisting of upper and lower metal plates, the lower plate being thicker than the upper plate, provided at their adjacent edges with means for securing them together and at their outer edges with flanges for securing them to the car body; said plates being formed with corrugations extending from substantially one side of the car to the other, so as to uniformly reinforce the entire portion of the car end against which the cargo is thrust.

"12. The combination, with the body of a railway car, of an all-metal end structure consisting of upper and lower metal plates provided at their adjacent edges with means for securing them together and at their outer edges with flanges for securing them to the car body, said plates being formed with corrugations extending from side to side of the car and terminating within the planes of the said walls of the car, so as to uniformly reinforce that portion of the end structure against which the cargo is thrust."

"14. The combination, with the body of a railway car, of an all-metal end structure comprising a sheet metal plate formed with flanges on its vertical edges which overlap and are secured to the side wall structures of the car, said side wall structures being recessed at the place of attachment of said plate, so as to bring the flanges of the plate within the planes of the sheathing of the car, substantially as and for the purpose described.

"15. The combination, with the body of a railway car, of an all-metal end structure consisting of upper and lower metal plates provided at their adjacent edges with means for securing them together and at their outer edges with flanges for securing them to the car body, said plates being formed with corrugations extending from side to side of the car, so as to

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

uniformly reinforce that portion of the end structure against which the cargo is thrust."

"Patentees say that their invention 'has for its object to provide an all-metal car end construction of novel character, which will be unusually strong and durable throughout, which may be conveniently and economically manufactured, and which shall possess certain other desirable and advantageous features to be hereinafter described and claimed.'"

The first defense, and the only one to which we will devote ourselves, is that of invalidity, based upon anticipation and the absence of invention. We have carefully examined the prior art structures, the Summers and Clark patent, No. 893,279, the British publication called the Engineer, of June 9, 1882, the Schoen patent, No. 432,086, the Gedge British patent of 1876, the so-called Van Dorn car end, and others, and agree with the District Court that the prior art does not anticipate.

A much closer and more debatable question is presented by the defense of want of invention. These prior art citations, while not anticipation, necessarily limited the unpre-empted field. Whether corrugations for strengthening purposes may or may not be the subject of invention has been many times before the Patent Office and the courts. This court spoke upon the subject in McCord & Co. v. Woods, 249 Fed. 203, 161 C. C. A. 239, and we referred to Stillwell v. McPherson, 218 Fed. 839, 134 C. C. A. 611, where the same question was considered. We also refer to Long v. Noye Manufacturing Co. (C. C.) 192 Fed. 566, where the court dealt with an advance in the art represented by the introduction of corrugations.

There is much force in the argument that at this date the use of corrugations, as such, for strengthening purposes, should not alone spell invention. Whether this position can be accepted unqualifiedly we need not determine, for the use of a particular type of corrugations for strengthening the wall end is not the only element possessing virtue in these combination claims. The two metal plates, the upper and the lower, the two different types, the means for securing them together, and for attaching them to the car body, are additional elements that must be taken into consideration in determining whether mechanical skill or invention was here involved.

[2] The evidence, showing extensive use and widespread adoption of the combination in an art where competition is keen and recognition difficult, compels us, we think, to resolve this close question in favor of appellees. The present case is a good illustration of the difficulty of properly appraising a structure, which, after it has satisfactorily solved a problem, appears easy. Viewed from the rear, the problem looks so simple; but, before its solution, all were vainly guessing at the answer.

It is not necessary to discuss infringement, for it is clearly established.

[3] Patent No. 1,058,889, to Walter P. Murphy, dated April 15, 1913, covering a railway car construction, is another one presented for our consideration. Claim 5, the only one involved, reads as follows:

"In a freight car construction, the combination, with the framing of the car, of an end comprising upper and lower metal plates which extend across the end of the car from side to side, and a tie member secured at

one extremity to the lower metal plate above the sill of the car, and at the other extremity to the lower part of the car structure."

If there be patentable novelty in this claim, it must lie in the presence of a "tie member secured at one extremity to the lower metal plate above the sill of the car, and at the other extremity to the lower part of the car structure." The question is at once presented whether such an element added to the combination constitutes invention. What was said by us in Walker Mfg. Co. v. Ill. Brass Mfg. Co., 265 Fed. 279, we think is applicable here. If a brace were required to support the car end, it would seem that any mechanic would use a tie member, as here shown, secured at one extremity to the lower metal plate and at the other end to the lower part of the car structure. We conclude the claim is invalid for want of invention.

[4] A typical claim, No. 6, of patent No. 1,254,860, reads as follows:

"6. In a railway box car, the combination, with the side sills, side plates, and side girths of the car, of a sheet metal end panel formed with a plurality of horizontal corrugations extending across the car end from side to side, attaching members for securing the upper and lower corners of the panel to said side plates and side sills, respectively, and attaching members for securing the panel at points intermediate its corners to the side girths of the car."

It is asserted that this structure displaces, "not merely the inclosing sheathing, but also the end frame members of the usual box car," and to do so "the metal end panels must be securely attached to the longitudinal members of the car frame." To further borrow the language of appellees:

"The attaching members securing the upper and lower corners of the panel to the side plates and side sills, and for securing the panel intermediate of its corners to the side girths of the car, therefore perform different functions from mere corner braces or straps employed in wooden cars, which are not called upon to resist blows delivered upon the inclosing sheathing of the car end, but merely blows delivered upon the end frame members of the car."

Considering the results and the co-operative effect of the various elements in this combination, we are not prepared to say that the presumption, which the allowance of this patent, sustained by the District Judge, creates, has been overcome. It is another one of the extremely close border line cases where the aforementioned presumptions are largely determinative.

[5] The sole claim of patent No. 1,271,234 reads:

"The combination, with the framing of a railway car, of a plate steel wall element formed with parallel stiffening corrugations of substantially the same width for the major portion of their length, and spaced one from another so that the stiffened portion of the plate presents a series of contiguous riblike formations of substantially equal width which project alternately in opposite directions from each other, said corrugations extending across the plate and terminating within the edges thereof, so as to leave flat margins for attachment to the car framing, the terminal portions of the corrugations being tapered in width and depth and merging into said flat margins."

Fig. 4 of the patent is here reproduced:

The defenses are prior public use and noninvention. In view of the prior art, which need not here be set forth in detail, we conclude that invention does not appear. While the drawing would indicate the use of two plates, they are not essential to the claim, and cannot be read into it.

Do parallel corrugations, as described, inserted in a plain steel wall element, constitute invention? True, there is some provision for the corrugations ending so that flat margins for attachment to the car frame exist; but this would be unavoidable, and would contribute so little to the combination that we conclude mechanical skill, rather than inventive genius, is disclosed by this patent.

[6] Three claims of reissue patent No. 14,434 are involved. Claim 9 reads as follows:

"9. In a metal end structure for railway cars, the combination with upper and lower metal end sheets, *said sheets being formed with flanges secured directly to the side sills and side plates of the car,* the upper sheet being formed with a flange which supports the ridge pole and purlins of the car, the lower sheet being formed with a flange which is secured directly to the

longitudinal members of the end frame of the car, *and means for connecting said end sheets one to another.*"

Two elements are italicized merely to point out the basis for the contention of noninfringement.

Appellant contends that it does not infringe, because its structure is not provided with "means for connecting said end sheets one to another." Its sheets are provided with riveted lap joints. Appellee, on the other hand, contends that its "connecting member should not be in any way restricted, but given the broadest possible meaning." With this position we cannot agree. Patentees not only chose to insert this element as such in the claim, but stressed it in its specifications. For example, in one place, they said:

"The invention has for a further object to provide means for effectively securing the end sheets, which means *serve the function also of strengthening and rigidifying the end structure.*"

Again, in the specifications, we find the following:

"A connecting element or bar, *36*, to which the edges of the end sheet are secured, and which, so far as concern rigidity and strength to the end structure, performs the function of the ordinary end girth."

Again:

"It will be seen that the connecting element *36* which connects the end sheets is anchored at opposite ends to the side girths, so that strains on the end sheets which are transmitted to this connecting member, which is in effect an end girth, are further transmitted to the heavy longitudinally extending side girths of the car."

Referring to other figures, patentee said:

"The sides are connected by the vertical connecting member *85*, formed with corrugations," etc.

The drawings are illustrative of the specifications and indicate clearly that this element so specifically inserted in the claim was a separate element or piece serving the dual purpose of an end girth and a common unit to which the end plates could be securely attached.

Claim 12 of this patent reads:

"12. A metal end structure for railway cars comprising a metal end sheet formed with an inturned flange and means for securing said flange directly to the longitudinal members of the frame of the car, *so that said flange performs the function of the usual end sill.*"

Noninfringement is claimed because appellant's car is provided with "the usual end sill." This claim was amended, so that the present closing words of the claim supplanted "takes the place of the usual end sill." Whether we recognize these two expressions as equivalent, or the amended claim as including a broader element than the former, it is clear that the purpose of this claim was to eliminate the "usual end sill." The drawings and the specifications, as well as the asserted value of the new structure, are represented by the absence of this end sill. Can it therefore be said that infringement exists, notwithstanding the infringing structure is provided with the very element which the claim is drawn to exclude? We think not. It may be true that under certain conditions a patent will be infringed, notwithstanding an ele-

ment is present in the infringing device not provided for in the claim of the patent. And we think this may be true, even though the patent has for one of its purposes the elimination of such an element. But where the claim consists of two elements, both of which are general and without the "so that" clause would be clearly invalid, infringement is not disclosed, unless the eliminated element is absent in the alleged infringing structure. Claim 12 is not infringed.

Claim 43 reads:

"43. In a railway box car, the combination, with the longitudinal frame members of the car, of a sheet metal end wall structure and means for anchoring said sheet metal structure at its corners to said longitudinal frame members, said sheets being formed with rigidifying corrugations and with angular flanges, the latter being attached to certain of said longitudinal frame members, so that they serve to provide rigid connections between the frame members which they connect and also to stiffen the edges of said sheet metal structure."

In view of discussions of the purpose, object, and result of the various elements that enter into this combination claim, it will be unnecessary to say more than to express our conclusion. We do not think that the Van Dorn structure anticipates this patent and that the combination claim is valid and infringed.

The decree is modified, by relieving defendant from the injunction and the accounting upon claim 5 of patent No. 1,058,889, claims 9 and 12 of reissue patent 14,434, and claim 1 of patent No. 1,271,234. So modified, it is affirmed. Each side shall pay one-half of the costs in this court.